**Lisa FERRELL, Respondent,**

v.

**Nancy CROSS, in her individual capacity, Petitioner, Appellant,**

**and**

**Marci Henderson, in her individual capacity, Petitioner, Appellant.**

**No. C4–95–1043.**

Supreme Court of Minnesota.

Jan. 16, 1997.

Huffman, Usem, Saboe, Crawford and Greenberg, Ronald H. Usem, Minneapolis, for Appellant Henderson.

Dorsey & Whitney LLP, Carol A. Peterson, Minneapolis, for Appellant Cross.

Steve G. Heikens, Minneapolis, for Respondent Ferrell.

## OPINION

PAGE, Justice.

We are asked to determine whether this action, brought by a Northwest Airlines (Northwest) employee, alleging state tort law claims of defamation and intentional infliction of emotional distress,[1] is preempted by the

---

1. Ferrell's complaint also asserted a cause of action for Intentional Interference with Contract. Ferrell voluntarily waived this cause of action at oral argument before the court of appeals. Hav-

Railway Labor Act (Act), 45 U.S.C. § 151. Respondent Lisa Ferrell commenced this action in August 1994 against two of her co-workers, appellants Nancy Cross and Marci Henderson. Cross and Henderson moved to dismiss the complaint based on their assertion that the district court lacked jurisdiction and that Ferrell's claims were preempted by the Act. The district court agreed with Cross and Henderson and dismissed Ferrell's complaint. The district court based its decision on its conclusion that Ferrell's claims were preempted because their resolution would require the court to interpret the collective bargaining agreement between the exclusive bargaining representative for Northwest's employees, the Transport Workers Union (Union), and Northwest.[2] The court of appeals reversed. The court of appeals, following the United States Supreme Court's decision in *Hawaiian Airlines v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), concluded that "the RLA does not preempt claims where there is no need to interpret a CBA" and that interpretation of the collective bargaining agreement was not necessary for resolution of Ferrell's state law claims. We affirm the court of appeals.

Ferrell was employed by Northwest as an Operations Planner Assistant. Henderson was also employed by Northwest as an Operations Planner Assistant. Cross was a Senior Operations Planner Assistant at Northwest and had supervisory responsibility for work scheduling and work assignments for Operations Planner Assistants. Ferrell, Cross, and Henderson were all members of the Union. The terms and conditions of their employment were governed by the collective bargaining agreement (CBA) negotiated between the Union and Northwest and by Northwest's Rules of Conduct, which were incorporated into the CBA as general company rules. The CBA covers, among other things, employee duties, hours, scheduling, leaves of absence, grievances, and discipline. Northwest's Rules of Conduct specifically prohibit "[h]arassing, threatening, intimidating, assaulting, fighting or provok-

ing a fight or similar interference with other employees at any time, on or off duty." The Rules also prohibit employees from "spread[ing] false or malicious rumors concerning the Company or any of its employees."

In September 1991, Ferrell filed a grievance alleging incorrect work scheduling under the CBA's grievance procedure. Northwest's investigation of the grievance revealed that the work scheduling provisions of the CBA had not been followed. As a result, Northwest implemented new work scheduling procedures. Ferrell also filed four grievances under the CBA in 1993, each raising an issue regarding work scheduling or compensation. Two of these grievances were settled and two were denied. In October 1993, Ferrell complained to Northwest that her prior grievances had resulted in Cross, Henderson, and others creating a hostile and intimidating workplace environment. Northwest's investigation into this complaint resulted in Henderson being disciplined. Later, in October 1993, Ferrell, after suffering a severe "panic attack," took a medical leave of absence. She returned to work in November 1993. According to Ferrell, the hostile and intimidating workplace environment continued upon her return. As a result, she applied for, and was granted, a long-term leave of absence without pay. In the summer of 1994, Ferrell filed a complaint with the Union against Cross, alleging harassment, intimidation, retribution, and that Cross' actions toward her violated the Union constitution. The Union denied the complaint.

■ Ferrell subsequently commenced this action. In her complaint, Ferrell claims that Henderson, among other things, insulted and intimidated her; berated her when she took medical leave; deliberately created errors in her work; directed other employees not to talk to her; directed other employees to shun and ostracize her; and falsified reports to management concerning the quality of her performance. Ferrell's complaint alleges that Cross was aware of, approved of, and participated in Henderson's conduct. The

---

ing been waived, there are no issues before us with respect to that cause of action.

**2.** Ferrell's complaint does not name either the Union or Northwest as defendants in this action.

complaint further alleges that Cross humiliated Ferrell by publicly disclosing facts about her medical leave and surgery; spread false rumors about her medical leave; coerced her into taking unpaid leave; ridiculed her medical condition; took actions which delayed her medical leave; attempted to "build a file" to get her fired; picked through her trash to retrieve evidence of her errors; and engaged in efforts designed to degrade her and to make her appear incompetent. The complaint also alleges that Cross and Henderson called Ferrell a liar, mentally unstable, a chronic complainer, and often referred to her as a "bitch," a "slut," and a "cunt." According to the complaint, Henderson and Cross said these things in front of other employees. Ferrell claims that these actions by Cross and Henderson caused her to suffer severe emotional distress, depression, sleeplessness, humiliation, embarrassment, damage to her reputation and standing in the community, as well as pain and suffering. Henderson and Cross contend that Ferrell's state law claims involve conduct which constitute minor[3] disputes under the Act and are therefore preempted by the Act.

■ National labor policy favoring collective bargaining and industrial self-government is set forth by Congress in the Act, 45 U.S.C. §§ 151–163, 181–184. The purpose of the policy is to provide stability in the railroad industry between labor and management. *Bhd. of R.R. Trainmen v. Chicago R. & I.R. Co.*, 353 U.S. 30, 40, 77 S.Ct. 635, 640, 1 L.Ed.2d 622 (1957). The provisions of the Act apply to air carriers. *Air Line Stewards and Stewardesses Ass'n. v. Northwest Airlines, Inc.*, 267 F.2d 170, 173 (8th Cir.1959), *cert. denied*, 361 U.S. 901, 80 S.Ct. 208, 4 L.Ed.2d 156 (1959). The Act provides a comprehensive framework for the resolution of labor disputes in the airline industry. *Hawaiian Airlines v. Norris*, 512 U.S. at 252, 114 S.Ct. at 2243.

■ Whether the Act preempts a state law cause of action is a question of congressional intent. *Id.* When it is clear or may fairly be assumed that the activities which the state purports to regulate are protected by federal labor law, or constitute an unfair labor practice, causes of action arising under state law are preempted. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 409 n. 8, 108 S.Ct. 1877, 1883 n. 8, 100 L.Ed.2d 410 (1988) (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959)). To allow the states to regulate conduct plainly within the central aim of federal regulation involves a danger of conflict between national labor policy as articulated by Congress and the requirements imposed by state law. *See Farmer, Special Adm'r. v. United Bhd. of Carpenters & Joiners of America, Local 25, et al.*, 430 U.S. 290, 296, 97 S.Ct. 1056, 1061, 51 L.Ed.2d 338 (1977) (stating that "[t]o leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress, and requirements imposed by state law.") (quoting *Garmon*, 359 U.S. at 244, 79 S.Ct. at 779). However, "in the absence of compelling congressional direction, we [will] not infer that Congress had deprived the States of the power to act." *Id.* at 296–97, 97 S.Ct. at 1061 (quoting *Garmon*, 359 U.S. at 244, 79 S.Ct. at 779). No provision of the Act provides such compelling congressional direction.

■ Even if there is no compelling congressional direction, state law claims will still be preempted when the state law cause of

---

**3.** The Act establishes a mandatory arbitration mechanism for the prompt and orderly settlement of labor disputes and differentiates between two categories of grievances. *Norris*, 512 U.S. at 252, 114 S.Ct. at 2243. Minor disputes "grow out of grievances or out of the interpretation or application of [collective bargaining] agreements covering rates of pay, rules, or working conditions." *Id.* at 252–53, 114 S.Ct. at 2244 (quoting 45 U.S.C. § 151a). Major disputes relate to "the formation of collective bargaining agreements or

efforts to secure them." *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989) (quoting *Elgin, J. & E.R. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289–90, 89 L.Ed. 1886 (1945)). The Act authorizes either side to submit a minor dispute to the National Railroad Adjustment Board, whose decision shall be final and binding on both sides. *Bhd. of R.R. Trainmen v. Chicago R. & I.R. Co.*, 353 U.S. 30, 34, 77 S.Ct. 635, 637, 1 L.Ed.2d 622 (1957).

action involves rights and obligations that are not independent of the applicable CBA or require interpretation of that agreement. *See Norris,* 512 U.S. at 256–62, 114 S.Ct. at 2245–2249. In the absence of compelling congressional direction, preemption of state law claims occurs when the state law claim is "inextricably intertwined" with consideration of the labor contract or when resolution of the state law claim "substantially depends" on the terms and provisions of the CBA. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 220, 105 S.Ct. 1904, 1912, 1915–16, 85 L.Ed.2d 206 (1985). Preemption will not apply, however, where a state law remedy is independent of the CBA. *Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882. This is so even if analysis of the same set of facts would be required to resolve a dispute arising directly under the CBA and a dispute arising under state tort law. *Id.* at 410, 108 S.Ct. at 1883–84. When the activity regulated is a peripheral concern of the federal law or when the regulated conduct touches local or state interests, in the absence of compelling congressional direction, we should not infer that Congress deprived the states of the power to act. *Linn v. United Plant Guard Workers,* 383 U.S. 53, 59, 86 S.Ct. 657, 661, 15 L.Ed.2d 582 (1966) (quoting *Garmon,* 359 U.S. at 243–44, 79 S.Ct. at 778–79). "[I]t is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement, that decides whether a state cause of action may go forward." *Livadas v. Bradshaw,* 512 U.S. 107, 123–24, 114 S.Ct. 2068, 2070, 129 L.Ed.2d 93 (1994) (citing *Lueck,* 471 U.S. at 213, 105 S.Ct. at 1912, and *Lingle,* 486 U.S. at 410, 108 S.Ct. at 1883–84). "[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state law litigation plainly does not require the claim to be extinguished." *Id.* at 124, 114 S.Ct. at 2078. The United States Supreme Court has recently addressed preemption of state law claims under the Act. *See Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203. In *Norris,* the Court held that a state law cause of action is not preempted if it involves rights and obligations that exist independent of the CBA and does not require interpretation of a CBA. *Norris,* 512 U.S. at 260, 114 S.Ct. at ——. Thus, in order to determine whether Ferrell's state law claims are preempted by the Act, we must look to the underlying state law and to the specific allegations contained in Ferrell's complaint to see whether the allegations involve rights and obligations that exist independent of the CBA or if they require interpretation of the CBA for their resolution.

■ In Count Four of the complaint, Ferrell alleges that Henderson and Cross defamed her. Specifically, she alleges that they made statements that she was a liar, that she was lying about the medical reasons for her leave of absence, and that she was mentally unstable and incompetent. Further, Ferrell claims that Henderson often referred to her as a "bitch," a "slut," or a "cunt," and that Cross referred to her as a "bitch" and a "chronic complainer."

■ In order to prove her defamation claim, Ferrell must establish that the alleged statements were made, that they were communicated to someone other than herself, that they were false, and that, as a result, her reputation was harmed. *Stuempges v. Parke, Davis & Company,* 297 N.W.2d 252, 255 (Minn.1980). Allegations of defamation are also subject to the defense of qualified privilege. *McBride v. Sears, Roebuck & Co.,* 306 Minn. 93, 96, 235 N.W.2d 371, 374 (1975).

> The law is that a communication, to be privileged, must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made in good faith, the law does not imply malice from the communication itself, as in the ordinary case of libel. Actual malice must be proved, before there can be a recovery, and in the absence of such proof the plaintiff cannot recover.

*Id.* at 96–97, 235 N.W.2d at 374 (*quoting Hebner v. Great Northern Railway Co.,* 78 Minn. 289, 292, 80 N.W. 1128, 1129 (1899)). To succeed with this defense, a defendant must show that an otherwise defamatory statement was made in good faith by a speaker who had an interest or duty with respect to the subject matter to a person having a corresponding interest or duty. *Luecke v. Schnucks Markets, Inc.,* 85 F.3d

356, 361 (8th Cir.1996). In the employment context, we have stated that: "Communications between an employer's agents made in the course of investigating or punishing employee misconduct are made upon a proper occasion and for a proper purpose * * *." *McBride*, 306 Minn. at 97, 235 N.W.2d at 374.

Based on the specific allegations of her complaint, we can only conclude that Ferrell's defamation claim is not preempted by the Act because interpretation of the CBA is not required.[4] There is nothing in the CBA which will shed any light on whether Cross' and Henderson's alleged statements—that Ferrell was a liar, lied about the medical reasons for the leave of absence, was mentally unstable, or that she was a "bitch," a "slut," or a "cunt" and a "chronic complainer"—were communicated to someone other than Ferrell, were false, or whether Ferrell's reputation was harmed as a result.[5]

■ To the extent that Cross and Henderson contend that the defense of qualified privilege to the defamation claim requires interpretation of the CBA and therefore preempts the state law claim, their argument fails. While reference to the CBA may be necessary to determine whether some of Cross' and Henderson's alleged statements were made upon a proper occasion and for a proper purpose, interpretation of the CBA is not necessary. Whether a qualified privilege defense applies can be determined solely according to state law. Although the court may consult the CBA, the CBA does not determine whether the privilege exists.

■ Ferrell's complaint also alleges that Cross and Henderson subjected her to intentional infliction of emotional distress. She contends that Cross and Henderson engaged in a course of conduct toward her which was hostile, harassing, abusive, humiliating, degrading, and intimidating, and that, as a result, she suffered severe emotional distress. To prevail on her claim of intentional infliction of emotional distress, Ferrell must prove that the complained of conduct: (1) was extreme and outrageous; (2) was intentional or reckless; and (3) in fact caused severe emotional distress. *Hubbard v. United Press Int'l., Inc.*, 330 N.W.2d 428, 438–39 (Minn.1983).[6]

4. We note that neither Cross nor Henderson has directed our attention to any specific provision of the CBA which requires interpretation for the resolution of Ferrell's defamation claim.

5. While it is arguable that resolution of the issue of whether Ferrell was incompetent might require some reference or interpretation of the bargaining agreement, we do not believe such reference or interpretation should result in preemption of Ferrell's claims. The allegation in the complaint regarding Cross' and Henderson's statements about Ferrell's incompetence relates to only one of a number of allegedly defamatory statements. None of the other allegedly defamatory statements requires any interpretation of the bargaining agreement. Should reference alone be required, preemption is not appropriate. If interpretation is required, this is only one of the allegedly defamatory statements, and that interpretation does not effect the other defamation claims.

6. As we noted in *Hubbard*: "Tort claims seeking damages for mental distress generally have not been favored in Minnesota. We have been careful to restrict the availability of such damages to those plaintiffs who prove that emotional injury occurred under circumstances tending to guarantee its genuineness." 330 N.W.2d at 437. We have previously noted that the type of actionable conduct referred to as "extreme and outrageous"

must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* at 439 (quoting *Haagenson v. National Farmers Union Property and Casualty Co.*, 277 N.W.2d 648, 652 n. 3 (Minn. 1979)).

> We further stated in *Hubbard* that:
> In explaining both the extreme nature of the conduct necessary to invoke this tort, and the necessary degree of severity of the consequent mental distress, the Restatement's commentary emphasizes the limited scope of this cause of action, and clearly reflects a strong policy to prevent fictitious and speculative claims. Because this policy has long been a central feature of Minnesota law on the availability of damages for mental distress, our adoption of the Restatement formulation as the standard for the independent tort of intentional infliction of emotional distress does not signal an appreciable expansion in the scope of conduct actionable under this theory of recovery. The operation of this tort is sharply limited to cases involving particularly egregious facts.
> *Id.* (footnote omitted).

As the issue is not before us, however, we do not by our decision today express an opinion as to whether the allegations in the complaint are sufficiently egregious to meet the difficult test for establishing a valid claim for intentional infliction of emotional distress.

As we did with her defamation claim, we conclude that Ferrell's intentional infliction of emotional distress claim is not preempted. We noted in *Pikop v. Burlington Northern R.R. Co.*, 390 N.W.2d 743, 752 (Minn.1986), that the focus of the state inquiry is necessarily on whether the elements of the tort alleged have been proven. That inquiry can be made without any need to interpret the CBA or, to the extent one exists, resolve the underlying labor dispute.

Because we conclude that Ferrell's state law tort claims are not preempted by the Railway Labor Act, we affirm the court of appeals.

Affirmed.

BLATZ, J., took no part in the consideration or decision of this case.