Rebecca **BERSCH**, Appellant,

v.

**RGNONTI & ASSOCIATES, INC.,**
et al., Respondents.

No. C8–98–590.

Court of Appeals of Minnesota.

Oct. 13, 1998.

Paul D. Peterson, Paul D. Peterson, Ltd., Woodbury, for appellant.

Victor E. Lund, Richard P. Mahoney, Mahoney, Dougherty & Mahoney, P.A., Minneapolis, for respondents.

Considered and decided by HUSPENI, P.J., and RANDALL and PETERSON, JJ.

## OPINION

PETERSON, Judge.

After respondent Rgnonti & Associates, Inc. (Rgnonti) discharged appellant Rebecca Bersch from employment, Bersch brought this action against Rgnonti and respondent Frederick Rgnonti, Rgnonti's president and sole shareholder. Bersch alleged a claim under the whistleblower statute and a defamation claim. The district court granted respondents' motion for summary judgment on both claims, and judgment was entered accordingly. We affirm the summary judgment on the defamation claim, reverse the summary judgment on the whistleblower claim, and remand the whistleblower claim for trial.

## FACTS

Bersch was employed as an investigator by Rgnonti, a private investigating firm, beginning July 2, 1992. She was later promoted to case manager, a position supervising the work of investigators.

Rgnonti had a contract with the Minnesota Department of Labor and Industry (department), worker's compensation division special compensation fund (fund), to investigate the validity of workers' compensation claims. In about April 1994, Frederick Rgnonti discovered evidence that Rgnonti's former office administrator had been involved in improper business dealings with the fund. Among the evidence were audiotapes containing recordings of conversations between the office administrator and the fund's director. On the tapes, the fund's director asked the office administrator to have Rgnonti conduct a sting operation for which the fund did not have funding authorization. To pay for the sting operation, the fund's director instructed the office administrator to overbill the fund for work performed on other workers' compensation cases.

In June 1994, Frederick Rgnonti notified the department that he had discovered an unusual billing arrangement between the department and Rgnonti. The Office of the Legislative Auditor then began an investigation of Rgnonti. In January and February 1995, auditors from the legislative auditor's office were on site at Rgnonti investigating workers' compensation files. Bersch cooperated with the auditors, answered their questions about files she had worked on, and provided documents when requested. Requests for information came to Bersch through Frederick Rgnonti.

In April 1995, Rgnonti assigned a different employee to perform Bersch's case management duties and assigned Bersch to perform administrative tasks one day per week and investigative duties on an as-needed basis. As a case manager, Bersch was a salaried employee. When she was reassigned, Rgnonti paid her only for hours actually worked and did not guarantee her any minimum number of hours per week. As a result, Bersch's income decreased due to a lack of assignments. Rgnonti's business was slow at that time, and the size of its staff had decreased considerably. Nonetheless, Bersch contended that when she was promoted to case manager, Frederick Rgnonti had promised her a guaranteed salary even if business became bad.

In August 1995, investigators from the legislative auditor's office requested a formal statement from Bersch. Bersch was reluctant to give a voluntary statement and requested that her statement be subpoenaed. Frederick Rgnonti told her to talk to Rgnonti's attorney, Tom Hunziker, who would represent her in giving her statement. Bersch delayed contacting Hunziker and eventually hired her own attorney, David Warg. On October 9, 1995, after Warg obtained a grant of immunity for Bersch's testimony, Bersch made a confidential, sworn statement to the legislative auditor's office.

Bersch alleges that in September and October 1995, Frederick Rgnonti was very angry with her because she had retained her own attorney instead of allowing Hunziker to represent her. Bersch also alleges that Frederick Rgnonti falsely accused her of failing to maintain contact with the office and failing to properly perform and follow through on work assignments; directed her

to lie during her statement; and directed her to say that he did not pad bills and to say that she knew nothing about a specific investigation. Bersch contends that other employees harassed her about her statement but she does not cite evidence connecting Frederick Rgnonti to the harassment. Bersch testified that some employees accused her of committing criminal acts and that one of the employees admitted that the accusation had come from Frederick Rgnonti.

By mid-October 1995, Bersch was unable to work due to health problems and was placed on paid disability leave. In November 1995, the Office of the Legislative Auditor issued a report concluding that the department had overpaid Rgnonti by more than $50,000. In February 1996, Bersch signed a release permitting the release of her statement to the Dakota County Attorney's Office. After Bersch signed the release, Frederick Rgnonti contacted her and said that he had heard that her statement was very damaging to him. Rgnonti discharged Bersch from employment effective June 3, 1996.

### ISSUES

I. Did the district court err in granting summary judgment in favor of respondents on Bersch's whistleblower claim?

II. Did the district court err in granting summary judgment in favor of respondents on Bersch's defamation claim?

### ANALYSIS

On appeal from a summary judgment, this court must review the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). We must view the evidence in the light most favorable to the nonmoving party. *Id.*

> [S]ummary judgment on a claim is mandatory against a party who fails to establish an essential element of that claim, if that party has the burden of proof, because this failure renders all other facts immaterial.

*Lloyd v. In Home Health, Inc.,* 523 N.W.2d 2, 3 (Minn.App.1994).

### I.

Statutory interpretation is a question of law subject to de novo review. *Metropolitan Sports Facilities Comm'n v. County of Hennepin,* 561 N.W.2d 513, 515 (Minn.1997).

Minn.Stat. § 181.932, subd. 1 (1996) provides:

> An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (a) the employee, or a person acting on behalf of an employee, in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official;
>
> (b) the employee is requested by a public body or office to participate in an investigation, hearing, inquiry; or
>
> (c) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason.

Bersch contends that her termination violated Minn.Stat. § 181.932, subd. 1(b).

■ To establish a prima facie case under the whistleblower statute, an employee must show that (1) she engaged in statutorily-protected conduct; (2) the employer took adverse action against her; and (3) there was a causal connection between the protected activity and the adverse action. *Rothmeier v. Investment Advisers, Inc.,* 556 N.W.2d 590, 592 (Minn.App.1996), *review denied* (Minn. Feb. 26, 1997).

■ The parties dispute whether Bersch presented sufficient evidence to prove that she engaged in statutorily protected conduct. The district court concluded that the evidence was insufficient to prove that Bersch was "requested" to participate in the legislative auditor's investigation of Rgnonti. We disagree. Although Bersch participated vol-

untarily in the investigation, in that she cooperated with investigators and was not forced to participate, she did not initiate any communications with personnel from the legislative auditor's office. Investigators from the legislative auditor's office asked her to provide information. Request means "[t]o ask (a person) to do something." *The American Heritage Dictionary* 1533 (3d ed.1992). "When the words in a statute are clear and unambiguous, a court must give effect to the plain meaning of the language." *State v. Wetsch,* 511 N.W.2d 490, 491 (Minn.App. 1994), *review denied* (Minn. Apr. 19, 1994). Under the plain meaning of the word "request," Bersch's participation in the investigation was requested.

Respondents argue that because Frederick Rgnonti encouraged Bersch's participation in the investigation, her participation was not requested by a public body or office. We disagree. Bersch presented evidence that the legislative auditor's office wanted information she possessed and took the necessary steps to obtain the information. The fact that Frederick Rgnonti encouraged Bersch's participation in the investigation and communicated requests for information to her does not override or negate the legislative auditor's requests for information. Evidence that Bersch's participation in the investigation resulted from the legislative auditor's office's requests for information was sufficient to establish that Bersch participated in the investigation at the request of a public body or office.

■ The district court also concluded that the evidence was insufficient to prove that Bersch engaged in statutorily protected conduct because there was no evidence that the information provided by Bersch benefited the public. We conclude that it was not necessary for Bersch to present evidence that the information she provided benefited the public.

In *Williams v. St. Paul Ramsey Med. Ctr., Inc.,* 551 N.W.2d 483, 484 n. 1 (Minn.1996), the supreme court stated:

> The popular title of the [whistleblower statute] connotes an action by a neutral— one who is not personally and uniquely affronted by the employer's unlawful conduct but rather one who "blows the whistle" for the protection of the general public or, at the least, some third person or persons in addition to the whistleblower. Were it otherwise, every allegedly wrongful termination of employment could, with a bit of ingenuity, be cast as a claim pursuant to [the statute].

But in an opinion released after the district court reached its conclusion in this case, the supreme court explicitly rejected the argument that *Williams* reads into the whistleblower statute a requirement that an employee's report must benefit the public. *Hedglin v. City of Willmar,* 582 N.W.2d 897, 902–903 (Minn.1998). The supreme court stated that the language from *Williams* quoted above is dictum and described it as cautionary language. *Id.* at 903.

■ Furthermore, Bersch asserted her whistleblower claim under Minn.Stat. § 181.932, subd. 1(b), which pertains to activities initiated by a public body or office. In contrast, Minn.Stat. § 181.932, subd. 1(a), (c), pertain to activities (either words or actions) initiated by an employee. Because Minn. Stat. § 181.932, subd. 1(b), applies only when a third-party requests an employee's participation in an investigation and cannot apply to claims arising from an employee's unilateral actions, the concern that any wrongful discharge claim could be characterized as a whistleblower action does not apply to claims under Minn.Stat. § 181.932, subd. 1(b).

Construing Minn.Stat. § 181.932, subd. 1(b), to require that information provided by an employee must benefit the public interest could result in employees who participate in the same investigation at the request of a public body or office being treated differently under the statute. Employees who provided information useful to the investigation and then suffered adverse employment action would have a whistleblower claim, while employees who possessed no useful information or were not asked questions that elicited useful information would have no recourse under the whistleblower statute. We see no basis for such an inconsistent application of the whistleblower statute.

■ The public interest served by Minn. Stat. § 181.932, subd. 1(b), is the interest in

788

having employees participate in investigations when requested to do so by a public body or office without fear that their participation will result in negative employment consequences. We decline to construe Minn. Stat. § 181.932, subd. 1(b), as requiring an employee to prove that her conduct furthered any additional public interest or that the investigation itself directly concerned the public interest. Evidence that an employee participated in an investigation at the request of a public body or office is sufficient to prove that the employee engaged in conduct protected under Minn.Stat. § 181.932, subd. 1(b).

Regarding the adverse action and causal connection elements of a prima facie case under the whistleblower statute, Rgnonti discharged Bersch from employment in June 1996. In February and March 1996, after Bersch allowed her statement to be released to the Dakota County Attorney's Office, Frederick Rgnonti told Bersch that he had heard that Bersch's statement was very damaging to him. Bersch presented evidence that Frederick Rgnonti attempted to control the information Bersch provided to the legislative auditor's office and that he was angry at her because she hired her own attorney to represent her in giving a statement to the legislative auditor's office instead of having Rgnonti's attorney represent her. Also, Bersch was reassigned from her case management position to a lower-paying position following her initial involvement in the legislative auditor's investigation. The evidence was sufficient to raise a fact question regarding whether Bersch's employment was terminated because of her participation in the investigation.

## II.

To prove a defamation claim, a plaintiff must establish

that the alleged statements were made, that they were communicated to someone other than herself, that they were false, and that, as a result, her reputation was harmed.

*Ferrell v. Cross*, 557 N.W.2d 560, 565 (Minn. 1997). A plaintiff must prove that the defendant published the statements. *Foley v. WCCO Television, Inc.*, 449 N.W.2d 497, 500

(Minn.App.1989), *review denied* (Minn. Feb. 9, 1990).

Bersch alleges that respondents made three defamatory statements about her. First, three Rgnonti employees accused Bersch of requesting immunity for her statement because she had been involved in criminal activity. Bersch testified that one of the employees admitted that Frederick Rgnonti was the source of the accusations. The district court found that Bersch's claim regarding this statement failed as a matter of law because the only evidence Bersch presented to show that Frederick Rgnonti was the source of the accusation was inadmissible hearsay evidence. Bersch argues that the evidence that Frederick Rgnonti was the source of the accusation is not hearsay and is admissible as an admission by a party-opponent under Minn. R. Evid. 801(d)(2). That rule, however, generally applies to a party's own statement, to a statement made by a person authorized by the party to make the statement, and to a statement made by a party's agent or servant. The evidence that Bersch presented to the district court was her own statement. Bersch cites no authority applying the admission by a party-opponent rule to a statement that one party to a lawsuit makes about the opposing party. The district court must disregard inadmissible hearsay evidence on a motion for summary judgment. *Murphy v. Country House, Inc.*, 307 Minn. 344, 349, 240 N.W.2d 507, 511 (1976) (citing Minn. R. Civ. P. 56.05).

Second, someone sent an anonymous fax to the Minnesota Board of Private Detectives stating that Bersch was a convicted felon. No evidence connects respondents to the fax.

Third, Frederick Rgnonti and a Rgnonti employee told the Fortis Benefits Group, a disability insurer, that Bersch had received a private investigator's license and might be working while collecting disability benefits. Bersch does not cite to evidence showing that any of the statements made to Fortis were false. Statements made in good faith and communicated among an employer's agents in the course of investigating or punishing employee misconduct are privileged, and privilege is a defense to defamation. *Ferrell*, 557 N.W.2d at 566.

Bersch failed to present sufficient evidence to prove the essential elements of a defamation claim. She did not present admissible evidence that respondents made the first statement or any evidence connecting respondents to the second statement. She did not present evidence that any of the information communicated to Fortis was false.

## DECISION

The district court properly granted summary judgment in favor of respondents on Bersch's defamation claim. The district court erred in granting summary judgment in favor of respondents on Bersch's whistleblower claim. We reverse the summary judgment on the whistleblower claim and remand the claim for trial.

**Affirmed in part, reversed in part, and remanded.**