**Vivienne SWANIGAN, Appellant,**

v.

**WESTERN AIRLINES, INC., Respondent.**

No. C2–86–868.

Court of Appeals of Minnesota.

Nov. 25, 1986.
Review Denied Jan. 21, 1987.

Stewart R. Perry, Wayzata, for appellant.

Dale E. Beihoffer, Mary E. Stumo, Faegre & Benson, Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and PARKER and HUSPENI, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a summary judgment on all counts of appellant's complaint alleging wrongful and racially discriminatory discharge. Appellant claims the trial court erred as a matter of law in dismissing her claims because (1) as a probationary employee without grievance rights her state law claims for wrongful discharge are excepted from federal preemption under the Railway Labor Act and (2) appellant established a prima facie case of racial discrimination. We affirm.

## FACTS

"In the context of a summary judgment motion, we must view the facts in the light most favorable to the non-moving party." *Van Leeuwen v. United States Postal Service*, 628 F.2d 1093, 1095 (8th Cir.1980).

In 1977, appellant Vivienne Swanigan was hired by respondent Western Airlines and entered a training course held in Los Angeles, California. On November 1, 1977, appellant relocated in Minneapolis where she went on-line as a probationary flight attendant as required for six months under the collective bargaining agreement. Section 15 of the Western Flight Attendant Agreement provides:

(A) Flight Attendants shall be considered as probationary employees for six (6) months from the date of assignment to the line as Flight Attendants. This six (6) month period shall be extended by any time the Flight Attendant is on furlough or on leave of absence in excess of fourteen (14) consecutive days.

(B) At the end of the first four (4) months of said probationary period, the Company shall furnish all Flight Attendants whose work is felt to be unsatisfactory a written report concerning their progress. A copy of such report will be furnished to the Association representative at the base. The Association representative may furnish written recommendations concerning any unsatisfactory progress report. Such recommendations shall be considered by the Company prior to taking any action regarding the Flight Attendant on probation. *The services of the Flight Attendant may be terminated at any time during the probationary period without a hearing.*

(Emphasis added).

Regarding rules for discipline or discharge of a flight attendant, section 23(D)(2) states:

Nothing in this Section shall be construed as extending the right of investigation and hearing to a Flight Attendant during her probationary period.

Section 24(D) further provides in relevant part:

The Board shall have jurisdiction over disputes between any employee covered by the Flight Attendants' Agreement and the Company growing out of grievances or out of interpretation of application of any of the terms of the Flight Attendants' Agreement.

On March 27, 1978, during appellant's fifth month of probation, an incident occurred on a night flight from Minneapolis to Las Vegas. Appellant, a senior flight attendant, and three other flight attendants served the flight.

The lights were on bright during the service by the flight attendants. Some passengers asked the junior flight attendants to turn the lights down. After some discussion back and forth between the flight attendants regarding this request, appellant stated "I don't give a fuck what you do with the lights anymore." Although a dispute exists regarding appellant's phrasing of her statement, appellant acknowledges she used the obscenity.

Appellant explains she was under the impression the determination of lights was up to the senior flight attendant. She was also concerned about some other passengers who wanted the lights on bright. The statement was made in the vicinity of passengers but there is no evidence showing the "word" was heard by passengers.

Following the flight, one of the junior flight attendants completed a report re-

garding the incident. The incident report was filed the next morning when the plane returned to Minneapolis. Upon receiving the report, appellant's supervisor suspended appellant pending an investigation of the incident. Appellant was terminated effective March 29, 1978 based on the incident and her entire record since November 1, 1977. The Basic Rules of Conduct, § 2(4), contained in the employees' manual warn of possible immediate termination for use of abusive language. Appellant's oral and written requests to challenge the termination were denied by respondent and the union because she was a probationary employee.

Appellant filed this action in November 1978 and subsequently added three causes of action. Her claims are summarized as follows:

    I. A Declaratory Judgment action to determine whether [respondent] followed the provisions of its contract by failure to contact [appellant's] union representative prior to terminating her.

    II. Discharging [appellant] for reasons that do not appear in the "Basic Rules of Conduct" pamphlet in violation of [appellant's] contract with [respondent].

    III. Racial Discrimination.

    IV. Pleading California law that there is an implied contract of fair and honest and non-discriminatory dealings in employment relationships.

    V. Pleading a violation of an implied contract of good faith and fair dealing under California law.

    VI. Intentional infliction of emotional distress.

On January 16, 1986, a hearing was held regarding respondent's motion for summary judgment on all six counts of appellant's complaint. The trial court granted respondent's motion and dismissed appellant's claims. The court dismissed as a matter of law appellant's claims for breach of contract, promissory estoppel, breach of an implied covenant of good faith and fair dealing, and intentional infliction of emotional distress because the claims were preempted by the Railway Labor Act and the state court lacks subject matter jurisdiction to hear the claims. In addition, the trial court dismissed appellant's claim of racial discrimination because appellant failed to establish a prima facie case of discrimination.

## ISSUES

1. Does the Railway Labor Act preempt state law claims for wrongful discharge by a probationary employee who may be terminated at any time without a hearing under the terms of the collective bargaining agreement?

2. Did appellant establish a prima facie case of racial discrimination?

## ANALYSIS

1. The collective bargaining agreement (CBA) between respondent and its employees was written pursuant to the mandates of the Railway Labor Act (RLA), 45 U.S.C.A. §§ 151–188 (West 1972 & Supp. 1973–1985). The RLA governs the employment relationships between an airline, its employees, and their certified collective bargaining representative. The Act's purpose is to provide an orderly mechanism to resolve disputes and minimize interruption in the nation's transportation services by strikes and labor disputes. *International Association of Machinists v. Central Airlines, Inc.*, 372 U.S. 682, 687, 83 S.Ct. 956, 959–60, 10 L.Ed.2d 67, *reh'g denied*, 373 U.S. 947, 83 S.Ct. 1533, 10 L.Ed.2d 702 (1963). Because of the manifest need for uniformity, a collective bargaining agreement created pursuant to the Act "is a federal contract and is therefore governed and enforceable by federal law, in the federal courts." *Id.* at 692, 83 S.Ct. at 962.

In *Andrews v. Louisville & Nashville Railroad Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), the United States Supreme Court made it clear state courts are without jurisdiction to review an action arising under the RLA. All disputes regarding the terms and conditions of employment must be submitted to the griev-

ance process under the collective bargaining agreement for resolution. The employee and employer are bound by those procedures. The only permissible judicial review of a dispute arising under the RLA lies in federal district court. *See Andrews,* 406 U.S. at 324–26, 92 S.Ct. at 1565–66.

While acknowledging state law claims for wrongful discharge are preempted by the RLA, appellant argues there is an exception to RLA preemption where the CBA does not provide a probationary employee a right to a hearing on termination. She distinguishes her case from *Andrews,* where the employee was afforded grievance rights and was required to exhaust them. Since she is precluded from the grievance process, she seeks to bring her wrongful discharge claims to another forum.

In *Hollins v. Kaiser Foundation Hospitals,* 727 F.2d 823 (9th Cir.1984), the court rejected a similar argument:

> [B]y prohibiting resort to the grievance procedure by probationary employees who may be discharged within the first ninety days of their employment, the parties intended to foreclose all contractual remedies for such discharged probationary employees, the CBA having established the grievance procedure as the exclusive remedy for aggrieved employees.

*Id.* at 825 (footnote omitted); *see Van Leeuwen,* 628 F.2d at 1097.

Without contractual remedies, the relationship between the parties is an employment at will, consistent with Minnesota law. *See Hunt v. IBM Mid America Employees Federal Credit Union,* 384 N.W.2d 853, 856 (Minn.1986); *Cederstand v. Lutheran Brotherhood,* 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962).

2. Appellant advances an equitable estoppel argument claiming the union and respondent set up a great unprotected class—the probationary employee—who has no recourse to the grievance machinery set up under the CBA. Having created such a contract, respondent should be estopped from denying appellant access to the state court, the only forum available. *See Roberts v. Friedell,* 218 Minn. 88, 96, 15 N.W.2d 496, 500 (1944) (equitable estoppel preventing a party from taking advantage of own wrong).

█ The fact that not all employees are provided the same protection under a collective bargaining agreement does not except employees with less protection from federal preemption. *Cf. Van Leeuwen,* 628 F.2d at 1096–97. Otherwise, employees with grievance rights would be limited to the procedures and remedies under the CBA but employees without grievance rights would be able to circumvent the CBA by asserting state law claims. Such a result is contrary to federal law and the policy of uniform federal labor law and exclusive union representation. *See Central Airlines,* 372 U.S. at 691–92, 83 S.Ct. at 961–62.

█ 3. Alternatively, appellant argues neither she nor her claims under state law are governed by the CBA, and hence the RLA. Although the CBA precludes administrative remedies during probationary status, the agreement governs other terms and conditions of employment for probationary flight attendants thus binding appellant to the CBA and subjecting her to the mandates of the RLA. *See Hodges v. Atchison, Topeka & Santa Fe Railway Co.,* 728 F.2d 414, 417 (10th Cir.), *cert. denied* 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984).

█ Similarly, appellant's state law claims for wrongful discharge are inextricably intertwined with the interpretation and application of the CBA. "[C]haracterizing plaintiff's claim as one based purely on common law breach of contract does not protect it from the effect of the *Andrews* 'exclusivity' rule." *Pandil v. Illinois Central Gulf Railroad Co.,* 312 N.W.2d 139, 143 (Iowa Ct.App.1981), *cert. denied* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982). In addition, appellant's claim of intentional infliction of emotional distress is preempted because the claim allegedly results from wrongful discharge, not "a

continual pattern of harassment." *See Pikop v. Burlington Northern Railroad Co.,* 390 N.W.2d 743, 753 (Minn.1986).

    4. On appeal from summary judgment, it is the function of the appellate court to determine whether genuine issues of material fact exist and whether the trial court erred in its application of the law. The rule in Minnesota is summary judgment is proper when the nonmoving party fails to provide the court with specific facts indicating that there is a genuine issue of fact.

*Hunt,* 384 N.W.2d at 855 (citations omitted); Minn.R.Civ.P. 56.03.

To establish a prima facie case in a discriminatory discharge case, appellant is required to prove (1) that she is a member of a protected class; (2) that she was qualified for the job in which she was employed; (3) that despite her qualifications she was discharged; and (4) either she was replaced by a nonminority or that other similarly situated nonminority employees were not discharged for nearly identical behavior. *Davin v. Delta Air Lines, Inc.,* 678 F.2d 567, 570 (5th Cir.1982); *see Danz v. Jones,* 263 N.W.2d 395, 399 (Minn.1978).

Both parties agree only the fourth element is at issue. Appellant claims the evidence presented raises a genuine issue of material fact because the testimony of other flight attendants indicates obscenity has been used by other flight attendants without disciplinary action. The record shows, however, the flight attendants testifying heard the "word" in the lounge or galley, never near passengers. Further, appellant admitted she is not aware of any white flight attendant written up for obscenity and not terminated.

Since appellant's burden is to show nonminority flight attendants were not fired for using profanity *in front of* passengers, the court concluded appellant failed to meet her burden of proof. Reports of such incidents would exist if nonminority probationary flight attendants were not discharged after being written up in an incident report for using obscenity.

In order to successfully oppose a motion for summary judgment, a party cannot rely upon mere general statements of fact but rather must demonstrate at the time the motion is made that specific facts are in existence which create a genuine issue for trial.

*Hunt,* 384 N.W.2d at 855. Appellant has failed here to prove the facts necessary to substantiate the fourth element required for a racially discriminatory discharge. Since there is no issue as to any material fact, the trial court properly granted summary judgment.

## DECISION

The RLA preempts appellant's state law claims of wrongful discharge. Appellant failed to establish a prima facie case of discrimination showing she was terminated because of her race. The trial court did not err in granting respondent's motion for summary judgment.

Affirmed.