Derrell B. WHITE, Appellant,

v.

WINONA STATE UNIVERSITY,
et al., Respondents.

No. C7-91-315.

Court of Appeals of Minnesota.

Aug. 27, 1991.

Judy M. Gernander, Winona, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Cindy L. Lavorato, Spec. Asst. Atty. Gen., Steven B. Liss, Spec. Asst. Atty. Gen., St. Paul, for respondents.

Considered and decided by KLAPHAKE, P.J., and LANSING and DAVIES, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Derrell B. White brought a breach of contract action on the termi-

nation of his three-year appointment as chairperson of the biology department at respondent Winona State University. The trial court concluded that White's action for breach of contract was non-justiciable and granted summary judgment for respondents. We affirm.

## FACTS

Respondent Winona State University hired appellant White as a faculty member and chairperson of the biology department effective fall quarter 1969. Having been selected by the biology department and approved by the University's administration, White held this appointment for successive three-year terms through February 28, 1985.

In January, 1984, the faculty nominated White for his sixth consecutive term as chairperson. Respondent Thomas Stark, then president of the University, now deceased, subsequently appointed White as chairperson for the 1985-87 academic years. White received a chairperson appointment form for the 1984-85 academic year which reflected the increased duty days and compensation attendant upon such an appointment. A collective bargaining agreement (Agreement) between the State University Board and the IFO/MEA governed White's employment during the 1984-85 academic year.

On February 28, 1985, respondent Charles Sorenson, academic vice-president, called a meeting of the entire biology department. Also present at the department meeting were the president of the IFO/MEA and its director of labor relations. White and other members of the department were not given advance notice of the meeting's purpose. Before the meeting White met with Stark and Sorenson at least once each to discuss departmental problems. White's removal as chairperson was not raised or discussed during these discussions.

At the department meeting Sorenson presented his proposal to remove White from his position as chairperson. A brief discussion occurred. Shortly after the meeting began, White announced that he was leaving and departed. Sorenson subsequently removed White from his position as department chairperson during the meeting. He remains a tenured professor in the biology department.

## ISSUE

Did the trial court err in holding that the breach of contract action was non-justiciable because the collective bargaining agreement provided the only means for resolving the dispute in question?

## ANALYSIS

On appeal from a summary judgment, the reviewing court must determine "whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). The summary judgment motion must be granted unless the party opposing the motion shows the existence of a triable issue. *Knudsen v. Northwest Airlines, Inc.*, 450 N.W.2d 131, 132 (Minn.1990).

The trial court granted summary judgment, determining that under the Agreement the removal of a departmental chair was non-justiciable. Therefore, the trial court concluded it had no subject-matter jurisdiction to hear White's breach of employment contract claims.

The Agreement at issue contains extensive provisions regarding departmental chairpersons, including a provision for removal of the chairperson.

> The President or his/her designee may, after consultation with the department, declare a vacancy to exist in the position of chairperson. *Such action shall not be subject to the Grievance Procedure.*

(Emphasis added). The Agreement also provides it is the complete agreement between the parties:

> The Employer and the IFO/MEA acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not re-

moved by law from the applicable area of collective bargaining, and that the understandings are set forth in this Agreement, and shall constitute the sole Agreement between the parties for the duration thereof.

The Agreement establishes a grievance mechanism up to, and including, grievance arbitration.

The widely-accepted rule in both Minnesota and federal courts is that, if a grievance procedure within a collective bargaining agreement is intended to be the exclusive remedy for an employee's claims, employees cannot bring actions in state or federal court for breach of contract. *See Bowen v. United States Postal Serv.*, 459 U.S. 212, 225 n. 14, 103 S.Ct. 588, 596 n. 14, 74 L.Ed.2d 402 (1983) (collective bargaining agreement may provide that grievance procedure is exclusive remedy for addressing employee's claims); *Truex v. Garrett Freightlines, Inc.*, 784 F.2d 1347, 1350 (9th Cir.1985) (because analysis of harassment and emotional distress claims was dependent on analysis of collective bargaining agreements, federal labor law preempted the claims); *Swanigan v. Western Airlines, Inc.*, 396 N.W.2d 607, 610–611 (Minn. App.1986) (state courts may not review wrongful discharge actions arising under the Railway Labor Act), *pet. for rev. denied* (Minn. Jan. 21, 1987).

Here, the Agreement expressly denies chairpersons who have been removed from that position access to the grievance procedure. By prohibiting or limiting resort to the grievance procedure, the parties foreclosed all contractual remedies for termination of chairperson appointment. *See Truex*, 784 F.2d at 1353 (lack of a right to grieve disciplinary warning letters barred court action on the basis of those warning letters); *Hollins v. Kaiser Found. Hosps.*, 727 F.2d 823, 825 (9th Cir.1984), (parties intended to deny probationary employees any remedy by prohibiting access to the grievance procedure, which was the exclusive remedy for aggrieved employees,

therefore the trial court lacked jurisdiction over breach of contract claim); *McIntire v. State*, 458 N.W.2d 714, 720 (Minn.App. 1990) (collective bargaining agreement which denied any remedy for grievance beyond meeting with employer provided exclusive remedy for consideration of grievance and precluded breach of contract action), *pet. for rev. denied* (Minn. Sept. 28, 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 970, 112 L.Ed.2d 1056 (1991). Without contractual remedies, the relationship between the parties is one of employment-at-will and White could be removed from his position as chairperson for any reason. *See Hunt v. IBM Mid America Employees Fed. Credit Union*, 384 N.W.2d 853, 856 (Minn. 1986); *Swanigan*, 396 N.W.2d at 611.

■ White contends, however, that his three-year chairperson appointment is an employment contract that exists apart from the Agreement. He finds a basis for that contract in two documents: (1) a note from Stark dated January 12, 1984; and (2) White's chairperson appointment form for the 1985 academic year. We disagree.

The January 12, 1984, note from Stark informed appellant of his nomination by the biology department to serve as chairperson of the department and appoints him to the position for the 1985–87 academic years. No other terms or conditions of employment such as salary or duty days are stated. Rather than a contract, the note was a formal notification that the selection of the chairperson for the biology department had been carried out according to the provisions of the Agreement.[1] The three-year term reflects the maximum length of the appointment, at the conclusion of which the selection process for chairperson must once again take place. To place any other significance on the time period renders meaningless the Agreement's clearly stated provision that a chairperson may be removed by the president or his/her designee with no restriction other than prior consultation with the department faculty.

1. The collective bargaining agreement calls for a department to nominate an individual as chairperson. The nomination then goes to the president or his or her designee for appointment. If the president declines to appoint the nominee, a second nominee is put forward. That nominee must be appointed by the president.

The chairperson appointment form covers the 1985 academic year. It contains specific information as to White's salary and the number of duty days required. Rather than a contract, this form is an official notification of White's employment status under the Agreement. The document itself clearly states that White's "appointment is subject to the collective bargaining agreement between the State University Board and the IFO/MEA, where applicable." Among the applicable provisions of the Agreement is its provision for removal of a current chairperson. We conclude neither the note nor the chairperson appointment form supports White's contention that he had an employment contract other than the collective bargaining agreement.

■ White also contends genuine issues of fact exist as to whether the consultation called for in the Agreement took place prior to his removal as chairperson. Again, we disagree. Sorenson called a meeting of the biology department to which each member of the department, including White, was invited. The record reflects that a majority, if not all, of the members of the department attended. At the meeting, Sorenson initiated discussion of the removal of White as chairperson. White chose to leave the meeting after a short period of time. Although the length and depth of discussion concerning the removal is unclear, it is clear Sorenson initiated the consultation required by the agreement.

■ White also contends it is unclear whether Sorenson was Stark's designee and, therefore, had the power to remove White from his position. Respondents submitted an affidavit by Sorenson indicating that he was serving as the designee. When an affidavit has been submitted in support of a motion for summary judgment the nonmoving party must present specific facts showing that there is an issue for trial on the merits. *Eakman v. Brutger,* 285 N.W.2d 95, 97 (Minn.1979). White did not present the trial court with any affidavit or other proof that the facts were not as found in Sorenson's affidavit. In fact, White's initial complaint specifically alleges in four instances that Sorenson *was* acting as designee. Respondents admitted the truth of the allegation in their answer to the complaint. There is also no indication on the record that any of the parties ever questioned Sorenson's authority to remove White at the time of removal. In particular, there is nothing to reflect that Stark objected to Sorenson's action. We believe the trial court correctly concluded no genuine issues of material fact existed as to Sorenson's power to remove White from his position.

## DECISION

The collective bargaining agreement between the IFO/MEA and the State University Board was the sole contract between the parties. Its grievance procedure provided the exclusive means for resolving grievances between the parties. Under the Agreement's terms a faculty member who has been terminated as chairperson of a department is prohibited from grieving the termination. By denying access to the grievance procedure, the parties foreclosed all contractual remedies for such a termination. The trial court correctly concluded White's breach of contract action was nonjusticiable and properly granted summary judgment for respondents.

Affirmed.