Craig P. WALLIN, Appellant,

v.

MINNESOTA DEPARTMENT OF CORRECTIONS, et al., Respondents,

Terry Bath, Respondent.

No. C0–98–2267.

Court of Appeals of Minnesota.

Aug. 3, 1999.

Review Denied Oct. 21, 1999.

Stephen C. Fiebiger, Stephen C. Fiebiger & Associates, Minneapolis, for appellant.

Mike Hatch, Attorney General, Marsha Eldot Devine, Assistant Attorney General, St. Paul, for respondents except Bath.

Mike Hatch, Attorney General, Ernesto L. Chavez, Assistant Attorney General, St. Paul, for respondent Bath.

Considered and decided by SCHUMACHER, Presiding Judge, HALBROOKS, Judge, and PARKER,* Judge.

## OPINION

HALBROOKS, Judge.

Appellant challenges the district court's dismissal of his employment claims, arguing the district court erred in (1) determining his tort claims were time-barred; (2) determining that he failed to establish a prima facie case of tortious interference with contract; (3) dismissing his defamation claims based on the statute of limitations and privilege; (4) determining it lacked jurisdiction to hear his contract claim; (5) dismissing his Minnesota Human Rights Act (MHRA) claim as time-barred and for failure to establish a prima facie case; and (6) dismissing Wallin's negligent and intentional infliction of emotional distress claims for failure to establish a prima facie case. We affirm as modified.

## FACTS

Appellant Craig P. Wallin began working at the Minnesota Correctional Facility at Stillwater (MCF–STW) in 1980. Within his first five years there, Wallin was promoted from Correctional Officer I (CO I) to Correctional Officer III (CO III). The record reveals no history of job performance problems until 1991.

In 1991, Wallin was convicted of assaulting his live-in girlfriend. In March 1992,

he assaulted her again. Wallin pleaded guilty to gross misdemeanor assault and was sentenced to 15 days in jail. While the charge was pending, Wallin entered a chemical dependency treatment program and returned to work on the condition that he remain free of chemicals for three years. After his conviction, following a hearing, MCF–STW warden Robert Erickson discharged Wallin effective August 27, 1992.

Wallin grieved the discharge through his union, the American Federation of State County and Municipal Employees (AFSCME), under the collective bargaining agreement (CBA) between AFSCME and the State Department of Corrections (DOC). On December 11, 1992, AFSCME and DOC reached a settlement, reinstating Wallin at a CO II level with CO III pay. The settlement and release agreement also granted Wallin pay, benefits, and sick leave/vacation accruals retroactive to his discharge. MCF–STW agreed to remove all documents relating to the discharge from Wallin's personnel file and not to impede Wallin's efforts for future transfers or promotions. Wallin's continued employment was made contingent on completion of his scheduled treatment program. Wallin signed the settlement and release, acknowledging he understood and voluntarily accepted its terms.

Shortly after his January 1993 reinstatement, Wallin requested vacation leave. His request was denied because it was not made six months in advance as required by the CBA. Wallin also requested two transfers, but those requests were denied by the institutions to which he sought to transfer. Wallin was credited with sick and vacation accruals for the period from discharge to reinstatement, but he was not credited with holiday pay.

Wallin began to have numerous problems shortly after his reinstatement. On

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

March 28, 1993, Wallin conducted a lengthy and aggressive "shake-down" of an inmate. According to a coworker, Wallin conducted the "shake-down" for purposes of harassment and intimidation — to show the inmate "who was the boss."

On April 3, 1993, Wallin intentionally left the cell doors in an entire cell block unbolted. Wallin stated he intended his action as a learning experience for a new officer, but he did not have supervisory permission or authority to conduct a training exercise. This action compromised prison security and could have allowed an inmate to free himself from his cell.

On April 20, 1993, Wallin was involved in an incident while conducting an inmate count with respondent Elizabeth Hughes. After Hughes told Wallin to "Hurry up," Wallin said, "Don't rush me," and shook a ring of keys in front of her face in an intimidating and hostile manner. Wallin then stated, "You really think that you are something around here, but you aren't shit. You are nothing."

Wallin claims a number of other incidents demonstrate he was harassed and subjected to discrimination because of his alcoholism disability. On January 31, 1993, Wallin overheard respondent Terry Bath tell another employee, "It's just like these alcoholic fuckers * * * around here that go to treatment, go serve a jail sentence, and the institution allows them to come back; this is a bunch of bullshit.". Bath received a verbal reprimand after MCF–STW investigated the comment. Bath also apologized to Wallin.

On April 3, 1993, Bath denied Wallin's request for an "early out" from his shift. Bath stated he denied the request because there were no additional officers on shift. Wallin filed a complaint, but an investigation determined the denial was not based on discrimination or harassment.

The April 20, 1993 incident between Wallin and Hughes led the DOC to convene a disciplinary committee to review allegations against Wallin. During the investigation, Wallin was placed on a five-day investigatory suspension without pay. The committee ultimately recommended to respondent Dennis Benson (warden of MCF–STW) that Wallin be terminated. Benson agreed with the recommended discharge and had respondent David Corbo (personnel director at MCF–STW) assist in the preparation of a discharge letter. Benson then sent Wallin the letter, dated April 30, 1993, detailing the reasons for his discharge. Those reasons included the incidents of March 28, April 3, and April 20, as well as a number of less serious incidents, including some from before his 1992 discharge.

In May 1993, after Wallin was discharged, Hughes wrote a memo to one of the investigators stating she believed that if Wallin returned, he "would be a serious threat to the security of the institution." She also stated in her memo that Wallin was "constantly creating a hostile work environment."

Wallin grieved his second discharge through AFSCME. Respondent Benson denied the grievance at a July 16, 1993 step-three meeting. Benson's reasons for denying the grievance were Wallin's "bizarre" and "inappropriate behavior," his "explosive temper," and that he posed a "serious security threat." The grievance was ultimately submitted to arbitration.

Following a formal arbitration hearing on March 9, 1994, the arbitrator determined that the inmate shakedown and security breach warranted discipline, but Wallin's behavior during the incident with Hughes was not punishable wrongdoing. The arbitrator ruled Wallin's misconduct was not so extreme as to warrant discharge, and ordered Wallin reinstated with the period following termination to be treated as an unpaid disciplinary suspension. After the decision, Benson renamed the April 30, 1993 letter a "suspension" letter and placed it in Wallin's personnel file in place of the "discharge" letter. Wallin returned to work in May 1994.

In August 1994, Wallin was hit by a laundry cart pushed by Bath. Wallin filed a complaint, but an investigation did not reveal that the incident was intentional. Bath was warned to be more careful. In April 1996, Bath offered another officer $20 to close a door on Wallin as he was walking through. The officer did not accept Bath's offer, but Wallin later learned of the incident and made a complaint. Bath received a reprimand.

Before commencing this action, Wallin filed two complaints based on the same factual allegations. On April 20, 1995, Wallin filed suit against the DOC and against Benson, Corbo, and Hughes in their individual and professional capacities in United States District Court, District of Minnesota, alleging federal claims for: (1) violation of due process, property interest, 42 U.S.C. § 1983; (2) violation of due process, liberty interest, 42 U.S.C. § 1983; (3) violation of equal protection, 42 U.S.C. § 1983; (4) conspiracy, 42 U.S.C. § 1985(3); and (5) violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1140. In addition, Wallin alleged supplemental state law claims for: (1) breach of contract; (2) tortious interference with contract; (3) defamation; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress. On April 28, 1995, Wallin filed suit in state district court against the same parties. The complaint was voluntarily dismissed without prejudice on December 18, 1995.

On September 22, 1995, the U.S. District Court determined that, due to technical errors, Wallin had not effectively served the DOC until June 5, 1995, Benson until June 6, 1995, and Hughes and Corbo until June 9, 1995. Wallin filed an amended complaint on September 28, 1995, asserting an additional federal claim for violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111. On November 12, 1996, Wallin filed a second amended complaint joining Bath as a defendant and asserting an additional state law claim for violation of the Minnesota Human Rights Act (MHRA), Minn.Stat. § 363.03, subd. 6.

On August 8, 1997, the federal district court issued an order and memorandum granting respondents' motion for summary judgment on all federal claims. *Wallin v. Minnesota Dep't of Corrections*, 974 F.Supp. 1234 (D.Minn.1997). The district court declined to exercise supplemental jurisdiction over Wallin's state law claims and dismissed them without prejudice. The Eighth Circuit Court of Appeals affirmed. *Wallin v. Minnesota Dep't of Corrections*, 153 F.3d 681 (8th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1141, 143 L.Ed.2d 209 (Mar. 8, 1999).

Wallin filed the complaint in the instant matter on August 29, 1997, alleging: (1) breach of contract against the DOC; (2) tortious interference with contract against the DOC, Benson, and Corbo; (3) defamation against the DOC, Benson, and Hughes; (4) intentional infliction of emotional distress against the DOC, Benson, and Corbo; (5) negligent infliction of emotional distress against the DOC, Benson, Corbo, and Hughes; and (6) aiding and abetting violations of the MHRA against Benson, Corbo, and Bath. Respondents moved for dismissal on the pleadings and/or for summary judgment. By order and memorandum issued September 4, 1998, the district court granted respondents' motion and dismissed Wallin's claims. Judgment was entered and this appeal followed.

## ISSUES

1. Did the district court err in determining Wallin's federal action was commenced when respondents were served and, therefore, Wallin's claims for tortious interference with contract, defamation (except two statements), and intentional infliction of emotional distress were time-barred?

2. Did the district court err in dismissing Wallin's tortious interference with contract claim on the alternate ground

that Wallin failed to establish a fact issue as to whether respondents' actions were privileged?

3. Did the district court err in dismissing Wallin's remaining defamation claims based on absolute and qualified privilege?

4. Did the district court err in dismissing Wallin's breach of contract claim for lack of subject matter jurisdiction?

5. Did the district court err in dismissing Wallin's MHRA claims as time-barred and for failure to establish a prima facie case?

6. Did the district court err in dismissing Wallin's claim for negligent infliction of emotional distress for failure to establish a prima facie case?

## ANALYSIS

■ The parties disagree over the proper standard of review. Wallin contends that the district court dismissed a number of his claims on the pleadings alone and therefore it is this court's task to determine whether "it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *Northern States Power Co. v. Franklin*, 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963). But because the district court considered matters outside the pleadings with respect to all claims, we review the district court's dismissals under the summary judgment standard. Minn. R. Civ. P. 12.02, 12.03; *Mueller v. Theis*, 512 N.W.2d 907, 911 (Minn.App.1994), *review denied* (Minn. Apr. 28, 1994).

On appeal from summary judgment, we review the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (1988). The evidence is viewed in the light most favorable to the nonmoving party. *Id.*

[S]ummary judgment on a claim is mandatory against a party who fails to establish an essential element of that claim, if that party has the burden of proof, because this failure renders all other facts immaterial.

*Lloyd v. In Home Health, Inc.*, 523 N.W.2d 2, 3 (1994).

### I

The district court concluded Wallin's claims for tortious interference with contract, defamation (except two statements), and intentional infliction of emotional distress were barred by the two-year statute of limitations. *See* Minn.Stat. § 541.07(1) (1998) (setting forth two-year statute of limitations for intentional tort claims). Wallin argues the district court erred because the limitations period was tolled by the filing of the federal action and because there is a six-year statute of limitations for tortious interference with contract. Respondents counter that tolling did not begin until the respondents were effectively served with the federal summons and complaint. Respondents further argue tolling did not apply to the claims against the DOC and Benson, Corbo, and Hughes in their official capacities because the Eleventh Amendment prevented federal jurisdiction over those claims.

### A. Commencement of the Federal Action

■■ The construction and applicability of statutes of limitation present questions of law subject to de novo review. *Ryan v. ITT Life Ins. Corp.*, 450 N.W.2d 126, 128 (Minn.1990). 28 U.S.C. § 1367 (1998) governs supplemental federal court jurisdiction over state law claims and provides in relevant part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to

claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

\* \* \* \*

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if \* \* \*

(3) the district court has dismissed all claims over which it has original jurisdiction \* \* \*.

(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

*Id.* at subd. (a), (c)(3), (d). The federal court need not exercise jurisdiction over the state claim for the statute of limitations to be tolled under 28 U.S.C. § 1367(d). *Rothmeier v. Investment Advisers, Inc.*, 556 N.W.2d 590, 593 (1996), *review denied* (Minn. Feb. 26, 1997).

Wallin argues that because he filed his federal action on April 20, 1995, the limitations periods on his state law claims were tolled from that date forward. But the respondents were not effectively served until June 5–9, 1995. In Minnesota, an "action is commenced against each defendant \* \* \* when the summons is served upon that defendant \* \* \* ." Minn. R. Civ. P. 3.01(a). Under the federal rule, by contrast, an action is commenced when the complaint is filed with the court. Fed. R.Civ.P. 3.

Wallin contends commencement of an action is purely procedural and relies on *Kampa v. White Consol. Indus.*, 115 F.3d 585 (8th Cir.1997), for the proposition that where a procedural right is at stake, the federal rule governs. *Kampa* involved a question over the Seventh Amendment right to a jury trial in federal court. *Id.* at 586. The *Kampa* court relied on *Hanna v. Plumer*, 380 U.S. 460, 469–70, 85 S.Ct. 1136, 1142–43, 14 L.Ed.2d 8 (1965), in determining that, because the right to a jury trial is an arguably procedural right and is addressed by a constitutional provision, the federal law governs. *Kampa*, 115 F.3d at 587.

But Wallin ignores the Supreme Court's decision in *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). In *Walker*, the Supreme Court held that where a state statute of limitations may bar a state claim, commencement of the suit must be determined under the state rules. *Id.* at 750–51, 100 S.Ct. at 1985. The Court based its decision on the notion that the method of commencement is an important part of the substantive scheme promoting the policies of the statutes of limitation under state law. *Id.* at 750–51, 100 S.Ct. at 1985–86.

Although *Walker* was a diversity case, its holding has been extended to cases where federal jurisdiction was based on a federal question. *See Anderson v. Unisys Corp.*, 47 F.3d 302, 309 (8th Cir.1995) (holding the rationale of *Walker* applies equally where federal claims are pled along with state claims); *Appletree Square 1 Ltd. v. W.R. Grace & Co.*, 815 F.Supp. 1266, 1272 (D.Minn.1993) (holding federal question jurisdiction does not command a result different than that in *Walker* ), *aff'd*, 29 F.3d 1283 (8th Cir.1994); *Piesco v. City of N.Y. Dep't of Personnel*, 650 F.Supp. 896, 900 (S.D.N.Y.1987) (holding state law controls commencement where state claim was brought under pendent jurisdiction (now supplemental jurisdiction)).

Furthermore, as pointed out by the court in *Appletree*, applying the state law for commencement of the action serves the purpose of limiting forum shopping. *Appletree*, 815 F.Supp. at 1272. If plaintiffs were allowed to use the federal commencement rule,

it would promote forum shopping by encouraging plaintiffs to self-insure against delayed personal or mail service by uniformly advancing federal question claims in every situation where a state law claim is approaching the statute of limitations period.

*Id.*

We therefore hold that, for purposes of determining whether a state claim is time-barred, commencement of a suit is governed by Minn. R. Civ. P. 3.01(a). Therefore, the district court properly dismissed Wallin's claims for intentional infliction of emotional distress and defamation (except two statements) as time-barred.

## B. Six-year Statute of Limitations for Tortious Interference with Contract

■ Wallin argues and respondents concede that the district court erred in determining that Wallin's tortious interference with contract claims were also time-barred under a two-year statute of limitations. *See Wild v. Rarig*, 302 Minn. 419, 446–47, 234 N.W.2d 775, 793 (1975) (holding wrongful interference with business relationships is included in Minn.Stat. § 541.05, the six-year statute of limitations).[1] Although wrongful interference with a business relationship through defamation, misrepresentation, or intentional infliction of emotional distress are included under the two-year statute of limitations for intentional torts, *Larson v. New Richland Care Center*, 538 N.W.2d 915, 920 (Minn.App.1995), *review denied* (Minn. Mar. 4, 1997), those are not the bases of Wallin's tortious interference claims. Wallin's claims deal with denial of his rights under the settlement agreement. Under *Wild*, these claims are governed by the six-year statute of limitations for contract claims. *Wild*, 302 Minn. at 446–47, 234 N.W.2d at 793. Therefore, the claims were not time-barred.

## C. Eleventh Amendment

Respondents further assert that Eleventh Amendment immunity prevented federal jurisdiction over the defamation and intentional infliction of emotional distress claims against respondents DOC and Benson, Corbo, and Hughes in their official capacities. Because we conclude the district court's alternate bases for dismissal of those claims were sufficient, we need not reach the constitutional issue. *See City of Willmar v. Short–Elliott–Hendrickson, Inc.*, 512 N.W.2d 872, 877 (1994) (declining to reach constitutional question where not necessary for resolution of the case).

## II

■■ Wallin further contends the district court erred in dismissing his tortious interference with contract claims against DOC, Benson, and Corbo on the alternate ground that Wallin failed to present evidence sufficient to create a fact issue as to whether respondents' actions were privileged. A party's interference with its own contract is not actionable. *Bouten v. Richard Miller Homes, Inc.*, 321 N.W.2d 895, 901 (Minn.1982). An officer, agent, or employee of a company is

> privileged to interfere with * * * another employee's employment contract with the company if that person acts in good faith, whether competently or not, believing that his or her actions are in furtherance of the company's business.

*Nordling v. Northern States Power Co.*, 478 N.W.2d 498, 507 (Minn.1991). This privilege may be lost if the agent is motivated by malice, "that is, by personal ill-will, spite, hostility, or a deliberate intent to harm the plaintiff employee." *Id.*

■ In the instant case, Wallin's complaints are that Benson and Corbo interfered with the settlement agreement by failing to pay Wallin retroactive holiday pay, failing to remove documentation from his personnel file, denying his vacation re-

---

1. Interpreting earlier version of Minn.Stat. § 541.05 (1998).

quest, failing to grant a pay increase, failing to credit him with accrued vacation time, and failing to approve his transfer requests. As the district court aptly concluded, all of these actions were "within the scope of Benson's and Corbo's supervisory duties." The burden of proving malice was on Wallin. *See id.*(holding the burden of proving actual malice is on the plaintiff). Wallin introduced no evidence that either Benson or Corbo acted with malice. Furthermore, we see no reasonable basis for inferring malice from the performance of these routine administrative duties. Because Wallin failed to establish a genuine fact issue as to malice, Benson's and Corbo's actions were privileged and the tortious interference claim was properly dismissed.

### III

Wallin also contends the district court erred in dismissing his defamation claims. We have already determined that all of Wallin's defamation claims were time-barred except for those arising from Benson's statements at the July 16, 1993 step-three grievance hearing and Benson's May 1994 republication of the April 30, 1993 discharge letter, renamed as a suspension letter. The district court concluded Benson was protected by absolute and qualified privilege with respect to those two statements and dismissed Wallin's remaining defamation claims.

While we do not agree that Benson's statements were protected by absolute privilege, *see Bauer v. State*, 511 N.W.2d 447, 450 (1994) (holding government supervisors not entitled to absolute privilege for allegedly defamatory statements made in the context of an administrative personnel matter), we concur with the district court that the statements were protected by qualified privilege.

Even if an untrue defamatory statement has been published, the person who made the statement will not be liable if it is conditionally privileged and the privilege is not abused. *Lewis v. Equita-*

*ble Life Assur. Soc.*, 389 N.W.2d 876, 889 (1986). To enjoy the qualified privilege, it must be based upon reasonable grounds, even if hindsight might show the statement to be false. *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 380 (Minn.1990).

For a communication to be privileged, it must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. *Stuempges v. Parke, Davis Co.*, 297 N.W.2d 252, 256–57 (Minn.1980) (citation omitted). This doctrine is based on the public policy of encouraging statements on certain occasions or in a particular context, including employment contexts. *Lewis*, 389 N.W.2d at 889. The employers communication to an employee of the reason for discharge may be a proper occasion on which to recognize a qualified privilege. *Id.* at 890. To defeat the privilege, a plaintiff must prove actual malice. *Stuempges*, 297 N.W.2d at 257.

Actual malice means what it says: ill-will and improper motive or wishing wantonly and without cause to injure the plaintiff. *Bauer*, 511 N.W.2d at 449 (citations omitted). If the evidence provides an inference that the defendant knew the statement was false by extrinsic evidence of ill feeling, or intrinsic evidence such as exaggerated language or the extent of publication, the malice requirement can be met. *Brooks v. Doherty, Rumble Butler*, 481 N.W.2d 120, 126 (Minn.App. 1992), *review denied* (Minn. Apr. 29, 1992).

The issue of whether actual malice is present is usually a jury question. *Lewis*, 389 N.W.2d at 890. But under circumstances similar to those in the instant case, this court has held that a defamation claim that raises a malice issue may properly be subject to summary judgment. *See Michaelson v. Minnesota Mining Mfg. Co.*, 474 N.W.2d 174, 182 (Minn. App.1991) (affirming summary judgment). In *Michaelson*, this court held that merely sending a letter to a plaintiffs supervisors

in which the defendant enumerated deficiencies in plaintiffs job performance and discussed the decision to reassign him to new duties did not establish actual malice sufficient to create a cause of action. *Id.* In a more recent case, several isolated incidents along with speculation that the defendant disliked the plaintiff were insufficient to overcome summary judgment on the issue of actual malice. *Hunt v. University of Minn.*, 465 N.W.2d 88, 93 (1991). In contrast, when, after a plaintiff declined to resign, a supervisor became uncommunicative and, without investigation, accused the plaintiff of retrieving a memo from her wastebasket, causing gossip that the plaintiff had engaged in gross misconduct, the jury was entitled to find malice. *Bradley v. Hubbard Broad., Inc.*, 471 N.W.2d 670, 675 (1991), *review denied* (Minn. Aug. 2, 1991).

In the instant case, the district court determined Wallin failed to demonstrate the existence of facts to make a prima facie case of malice. As the district court identified, the complained-of statements were made in the discharge of Benson's duties as warden of MCF–STW. Furthermore, the terminology Benson used in the letter came directly from the statements taken during the investigation, negating the argument that Benson's language provides intrinsic evidence of malice.

■■■ Wallin argues that notifying the police of Wallin's suspension and discharge in 1993 and distributing a memo in 1993 to the car patrol directing them to report Wallin's presence on prison grounds demonstrate actual malice. Contrary to Wallin's assertion, these actions do not give rise to a reasonable inference of ill-will. Benson was the warden of a prison. It was his responsibility to err on the side of safety. Benson testified the results of the investigation caused him concern over Wallin's instability. Under those circumstances, it was reasonable for Benson to take steps to ensure the safety of the institution and its staff. As the district court concluded, those actions do not lead to an inference of malice. The district court properly determined Wallin failed to establish a material fact issue as to malice.

## IV

Wallin contends the district court erred in determining it lacked jurisdiction to hear the breach of contract claim because of the exclusivity of the CBA. Wallin argues that he was entitled to enforce the settlement agreement because he was an intended third-party beneficiary of the December 11, 1992 settlement agreement between DOC and AFSCME.

■■■ Although plaintiffs may recover for breach of a contract if they are intended beneficiaries of the contract, *Cretex Cos. v. Construction Leaders, Inc.*, 342 N.W.2d 135, 139 (Minn.1984), Wallin fails to provide any authority for the proposition that a third-party may recover under an agreement reached pursuant to the terms of a collective bargaining agreement.

The widely-accepted rule in both Minnesota and federal courts is that, if a grievance procedure within a collective bargaining agreement is intended to be the exclusive remedy for an employees claims, employees cannot bring actions in state or federal court for breach of contract.

*White v. Winona State Univ.*, 474 N.W.2d 410, 412 (Minn.App.1991) (citing *Bowen v. United States Postal Serv.*, 459 U.S. 212, 225 n. 14, 103 S.Ct. 588, 596 n. 14, 74 L.Ed.2d 402 (1983)); *see also Edina Educ. Ass'n v. Board of Educ. of Indep. Sch. Dist. No. 273*, 562 N.W.2d 306, 310 (1997) (generally, an employee must exhaust all administrative remedies provided under a collective bargaining agreement before bringing an action derived from that contract in district court), *review denied* (Minn. June 11, 1997).

Wallin argues that *White* and *Bowen* are distinguishable because they involved claims brought directly under the collective bargaining agreements. We disagree.

It is uncontroverted that the issues Wallin complains of, i.e., vacation, holiday pay, pay increases, and personnel matters, are terms and conditions of employment covered by the CBA. Article 17 of the CBA specifically provides for a grievance procedure to redress complaints in these areas. Furthermore, the grievance procedure that led to the settlement agreement was mandated under the CBA. To allow Wallin to avoid the exclusivity of the CBA because a settlement agreement was reached under the terms of the CBA would effectively negate that exclusivity.

AFSCME is Wallin's exclusive representative. *See* Minn.Stat. 170A.12 (1998). Wallin has produced no evidence that he attempted to resolve these issues through the CBA grievance procedure. Therefore, the district court properly concluded it lacked jurisdiction to enforce the settlement agreement and dismissed Wallin's breach of contract claim.

Wallin further argues respondents should be estopped from arguing the contract is beyond the jurisdiction of the court after using the waiver included in the settlement agreement as a defense to Wallin's federal claims. Although we see no inconsistency in respondents positions before the federal and state district courts, we also note that even if judicial estoppel properly applied, it could not vest the district court with subject matter jurisdiction under these facts. Wallin's exclusive remedy is under the CBA.

## V

Wallin also contends the district court erred in dismissing his claims against Benson, Corbo and Bath for aiding and abetting violations of the MHRA, Minn.Stat. §§ 363.01–.20 (1998). The district court dismissed the claims, concluding both that they were time-barred and failed to establish discrimination or harassment as a matter of law.

### A. Respondent Bath

A claim of an unfair discriminatory practice must be brought as a civil action pursuant to section 363.14, subdivision 1, clause (a), filed in a charge with a local commission * * *, or filed in a charge with the commissioner within one year after the occurrence of the practice. Minn.Stat. § 363.06, subd. 3.

The initial question to be addressed is whether Wallin's action against Bath was timely. The last claimed incident of harassment by Bath occurred on April 20, 1996, when Bath allegedly offered another officer $20 to close a door on Wallin. Bath was served with the federal summons and complaint on November 12, 1996. Wallin contends the limitations period was tolled under 28 U.S.C. § 1367(d), during the pendency of the federal action.

Minn.Stat. § 363.14, subd. 2, governs district court jurisdiction and provides in relevant part:

Any action brought pursuant to this section shall be filed in the district court of the county wherein the unlawful discriminatory practice is alleged to have been committed or where the respondent resides or has a principal place of business.

*Id.*

 The district court, focusing on the word "county," interpreted Minn.Stat. § 363.14, subd. 2, as precluding federal district court jurisdiction over an MHRA claim. Although the statute clearly only contemplates original jurisdiction in state court, we do not agree that it precludes federal supplemental jurisdiction. *See Luncsford v. Nix*, 848 F.Supp. 859, 860–61 (S.D.Iowa 1994) (interpreting a similar, but more strongly worded Iowa statute as allowing supplemental jurisdiction). To hold otherwise would "defeat the purposes of supplemental jurisdiction to promote expediency, efficiency, and fairness to the parties." *Id.* at 861 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)).

Furthermore, given the similarity of the legal issues involved in federal discrimination claims and claims brought under the MHRA, to require a dual track for plaintiffs who wished to assert both federal and state law claims would be absurd. *See* Minn.Stat. § 645.17(1) (1998) (legislature does not intend an absurd result). We therefore hold an MHRA claim may be brought in federal court pursuant to supplemental jurisdiction.

The federal action was initiated against Bath when he was served with the summons and complaint on November 12, 1996, well within the one-year limitations period for filing MHRA claims. *See* Minn. Stat. § 363.14, subd. 1(a). The limitations period was tolled under 28 U.S.C. § 1367(d), and the state action was commenced within 30 days after the federal court dismissed the MHRA claim without prejudice. Therefore, the claim is not barred by the one-year limitations period.

Respondents' additional argument that Wallin was required to bring an action within 45 or 90 days after filing a charge with the EEOC is without merit.

> The commissioner or a person may bring a civil action seeking redress for an unfair discriminatory practice directly to the district court. *In addition,* a person may bring a civil action:
>
> * * * *
>
> (3) after 45 days from the filing of a charge pursuant to section 363.06, subdivision 1, if a hearing has not been held pursuant to section 363.071 * * *. The charging party shall notify the commissioner of an intention to bring a civil action, which shall be commenced within 90 days of giving the notice.

Minn.Stat. § 363.14, subd. 1(a), 1(a)(3) (emphasis added). Because Wallin brought suit in federal court within the one-year limitations period, Bath was given adequate notice.

▮▮▮ Nevertheless, the district court also dismissed the MHRA claim on the alternate ground that Wallin "failed to es-

tablish any facts giving rise to a prima facie case that Bath acted in concert with other staff or supervisors to discriminate against [Wallin] because of his disabilities."

Wallin brought his claim under Minn. Stat. § 363.03, subd. 6, which provides in relevant part:

> It is an unfair discriminatory practice for any person:
>
> (1) Intentionally to aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by this chapter;
>
> (2) Intentionally to attempt to aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by this chapter * * *.

*Id.* The evidence submitted by Wallin simply fails to show Bath acted in concert with anyone in order to harass or discriminate against Wallin because of his disability. The four incidents involving Bath include: (1) the "alcoholic fuckers" comment; (2) the denial of an "early out;" (3) the laundry cart incident; and (4) the offer of $20 dollars to have another officer close a door on Wallin. As the district court concluded, only the "alcoholic fuckers" comment bore any relation to Wallin's disability. And as the federal court concluded in relation to the ADA claim, that comment was no more than a "mere offensive utterance." *Wallin v. Minnesota Dep't of Corrections*, 974 F.Supp. 1234, 1244 (D.Minn.1997); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993) (holding a "mere offensive utterance" insufficient to create a hostile work environment for Title VII purposes); *Lang v. City of Maplewood*, 574 N.W.2d 451, 454 (Minn.App.1998) (considering ADA precedent for purposes of interpreting MHRA), *review denied* (Minn. Apr. 14, 1998). Because Wallin failed to establish an essential element of the claim, summary judgment was mandatory. *See Lloyd*, 523 N.W.2d at 3.

## B. Respondents Benson and Corbo

As with Bath, Wallin failed to present evidence to support the aiding and abetting claims against Benson and Corbo. There is absolutely no evidence in the record to support the conclusion that Benson and Corbo intentionally sought to have others harass Wallin because of his disability or in reprisal. *See Davis v. Hennepin County*, 559 N.W.2d 117, 123 (Minn.App. 1997) (holding the aiding and abetting provision requires intentional conduct and actions are judged based on their objective reasonableness, and further noting that the proof required to sustain the claim is similar to that required for actual malice), *review denied* (Minn. May 20, 1997). Therefore, summary judgment was properly granted.

## VI

Finally, Wallin argues the district court erred in dismissing his claim for negligent infliction of emotional distress.

To establish a claim for negligent infliction of emotional distress, [a] plaintiff must ordinarily show he (1) was within a zone of danger of physical impact; (2) reasonably feared for [his] own safety; and (3) suffered severe emotional distress with attendant physical manifestations.

*K.A.C. v. Benson*, 527 N.W.2d 553, 557 (Minn.1995). Minnesota recognizes an exception to the "zone of danger" requirement where a plaintiff has suffered mental anguish resulting from a direct invasion of rights, such as when one is defamed. *Bohdan v. Alltool Mfg., Co.*, 411 N.W.2d 902, 907 (Minn.App.1987), *review denied* (Minn. Nov. 13, 1987); *Strauss v. Thorne, M.D.*, 490 N.W.2d 908, 913 (Minn.App.1992), *review denied* (Minn. Dec. 15, 1992).

Wallin does not allege he was in a zone of danger of physical impact and his reliance on *Bohdan* cannot support a negligent infliction of emotional distress claim because his defamation claims are either time-barred or barred by qualified privilege. Because Wallin was unable to establish a prima facie case as a matter of law, summary judgment was properly granted.

## DECISION

Wallin's claims for intentional infliction of emotion distress and defamation (except two statements) were barred by the statute of limitations in Minn.Stat. § 541.07(1). His claims for tortious interference with contract and his remaining defamation claims were properly dismissed due to respondent Benson's qualified privilege. His contract claims were properly dismissed as non-justiciable. His MHRA claims and negligent infliction of emotional distress claims were properly dismissed for failure to present evidence to establish a prima facie case.

**Affirmed as modified.**