**STATE of Minnesota By David BEAU-LIEU, Commissioner, Department of Human Rights, Respondent,**

v.

**RSJ, INC., d/b/a Jose's American Bar & Grill, et al., Relators.**

No. C1-94-2365.

Court of Appeals of Minnesota.

June 13, 1995.

Hubert H. Humphrey, III, Atty. Gen., Erica Jacobson, Asst. Atty. Gen., St. Paul, for respondent.

Michael C. Black, St. Paul, for relators.

Considered and decided by DAVIES, P.J., and AMUNDSON and MULALLY,* JJ.

## OPINION

AMUNDSON, Judge.

Almost three years after former employees filed discrimination charges against relator RSJ, Inc. (RSJ), respondent Minnesota Department of Human Rights (department) issued two sets of probable cause findings

crediting the charges. Eighteen months after the first set of probable cause findings and a year after the second set, the department issued a complaint naming both RSJ and its corporate officer and shareholder, relator Joseph Schaefer, as defendants. Following relators' unsuccessful motion for summary disposition, an Administrative Law Judge (ALJ) found that RSJ had discriminated and concluded Schaefer was personally liable. Relators sought review by certiorari. We reverse.

## FACTS

Joseph Schaefer and his wife were 70 percent shareholders of RSJ, which operated a restaurant known as Jose's American Bar and Grill. Joseph Schaefer made decisions concerning the operation of the restaurant. In 1989, in an effort to change the image of the restaurant, he required the waitresses to wear revealing uniforms. One waitress was fired after making it known that she would not wear the new uniform. Four others were fired for their refusal to wear it when it was issued to them. A male bar manager who refused to support the policy on new uniforms was also fired.

These six employees filed charges with the department.[1] One filed a charge on July 10, 1989; the probable cause finding relative to that charge was filed almost three years later, on June 22, 1992. The other three filed their charges on April 23, April 24 and April 27, 1990; probable cause findings in their cases were filed on November 30, 1992, more than 31 months later.

RSJ sold its assets and went out of business in May 1993. After investigating the charges, the department issued a complaint on November 30, 1993. The complaint was the first document to name Schaefer. Relators moved for summary disposition which was denied on April 26, 1994. The next day, Schaefer filed a chapter 11 bankruptcy petition.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. After the filing of this appeal, one of the waitresses and the bar manager reached a settlement with relators. Consequently, only four of the charging parties' charges are now relevant.

A hearing was held before an ALJ. On October 24, 1994, the ALJ issued findings of fact, conclusion of law, and an order (1) determining that RSJ had discriminated in violation of Minn.Stat. §§ 363.03, subd. 1(2)(c) and 363.03, subd. 7, (2) awarding damages for lost wages and mental anguish, punitive damages, and a civil penalty, and (3) concluding that Schaefer was personally liable for having aided and abetted the discrimination in violation of Minn.Stat. § 363.03. subd. 6(1) and under the "responsible corporate officer" doctrine. On December 6, 1994, the ALJ issued an order requiring relators to pay the state of Minnesota $8,748.95 for hearing costs.

Relators sought review by certiorari of the ALJ's October 24, 1994 decision. This court, by special term order, construed the petition as seeking review of the December 6, 1994 final order.

### ISSUES

1. Does the fact that the probable cause findings were not issued within the statutory time period require dismissal of the complaint?

2. Does the untimeliness of the aiding and abetting charge against Schaefer require dismissal of that charge?

3. Can Schaefer be held liable on the grounds that he aided and abetted the discrimination by relator RSJ?

4. Can Schaefer be held liable under the "responsible corporate officer" doctrine?

### ANALYSIS

This court may affirm, reverse, modify or remand a decision of the Department of Human Rights if that decision was "[m]ade upon unlawful procedure" or is "[a]ffected by other error of law." See Minn.Stat. § 14.69 (1994).

I. *Failure to Issue Timely Probable Cause Finding*

■ Relators argue that the charges against them should be dismissed because the department failed to make a probable cause determination within the statutorily required time period.

Under the Minnesota Human Rights Act, the Commissioner of Human Rights is required to inquire into the truth of the allegation of the charge "promptly" and "the commissioner shall make a determination within 12 months after the charge was filed as to whether or not there is probable cause to credit the allegation of unfair discriminatory practices." Minn.Stat. § 363.06, subd. 4(1) (1988). It is undisputed that the department took 31 months to make three of the determinations, and 35 months to make the fourth. Thus, it is clear that the department failed to comply with the statute's 12 month deadline. We must decide the effect of this failure.

The ALJ held that the 12 month statutory requirement is directory rather than mandatory because the statute provides no consequence for failure to comply. We conclude, however, that the legislature did not intend the phrase "the commissioner shall make a determination within 12 months" to be without effect. See Minn.Stat. § 645.16 (1994) (laws to be construed to give effect to all provisions); Minn.Stat. § 645.44 (1994) ("shall" is mandatory). While failure to comply with a statutory time limit may not render a department's decision void as a matter of law, the fact that the department took almost three times as long as the statutory time limit renders the limit meaningless. *But see In re Eigenheer,* 453 N.W.2d 349, 354–55 (Minn.App.1990) (statute that does not declare penalty for failure to comply with a requirement generally held to be directive).

Moreover, it is at least arguable that relators were damaged by the department's initial delay in deciding to prosecute and by the ensuing delays. *See Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945) (statutes of limitation spare the citizen "from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost.") Relators did not learn of the charges against them until more than three years after the alleged events occurred. RSJ had sold its assets and gone out of business before the complaint was filed. By the time the hearing took place, Schaefer had filed for bankruptcy. More than five years

separated the hearing from the complained of events.

Thus, we conclude that the complaint must be dismissed because of the almost three year delay in this case.

## II. *Untimeliness of Aiding and Abetting Charge Against Schaefer*

■ Relators argue that the untimeliness of the aiding and abetting charge against Schaefer requires dismissal of that charge.

The Minnesota Human Rights Act provides that it is an "unfair discriminatory practice" for a person "[i]ntentionally to aid, abet, incite, compel or coerce" a person to engage in discriminatory practices. Minn. Stat. § 363.03, subd. 6 (1988). The Act requires that claims of unfair discriminatory practices be brought or filed "within one year after the occurrence of the practice." Minn. Stat. § 363.06, subd. 3. Thus, claims of aiding and abetting must be brought within one year after the occurrence of the practice.

The charging parties had ceased working for RSJ by May 5, 1989. Schaefer was first named in this action in the complaint dated November 30, 1993. None of the charging parties named him as an aider or abettor or as a respondent in any of the charges, nor did the department name him in its probable cause determinations.

Schaefer argues that he did not receive notice of his potential liability within the statutory time frame, violating both the statute's language and its purpose of providing formal notice to the employer and prospective defendant of the charges that have been made against them. *See Anderson v. Northwestern Nat'l Life Ins. Co.*, 480 N.W.2d 363, 365 (Minn.App.1992).

The commissioner argues that Schaefer did receive notice because the charges were served upon him and he was notified of the probable cause determinations. However, there was no probable cause determination on the aiding and abetting claim against Schaefer, and consequently no indication that he was potentially liable on that charge. More than four years elapsed between the alleged discriminatory acts and an assertion that Schaefer was personally liable for them.

It is at least plausible that Schaefer did not know he was potentially personally liable.

The commissioner also argues that dismissing the charge for lack of adequate notice is overly technical. The consequences of the lack of notice, however, were more than a technical violation. Schaefer, not knowing he was potentially liable, lacked opportunity or incentive to conciliate and stopped conciliation efforts when RSJ, which Schaefer assumed to be the only liable entity, went out of business. Therefore, we conclude that the aiding and abetting charge against Schaefer must be dismissed.

## III. *Schaefer's Liability for Aiding and Abetting*

■ Relators argue that Schaefer should not be liable for aiding and abetting RSJ's discriminatory acts.

The ALJ concluded that Schaefer, as a shareholder and corporate officer of RSJ, was liable for any award against RSJ because he aided and abetted RSJ in discriminating and in engaging in reprisals in violation of the statute.

The statutory language provides no reason for making aiding and abetting discrimination an exception to the limitation of corporate liability. As a major shareholder of RSJ, Schaefer is already liable for its discriminatory acts—the liability of RSJ will inevitably affect its shareholders. *Cf. State by McClure v. Sports & Health Club, Inc.*, 370 N.W.2d 844, 854 (Minn.1985). Thus, we conclude he should not also be held liable as an individual for aiding and abetting those acts.

## IV. *"Responsible Corporate Officer" Doctrine*

■ Relators argue that Schaefer is not liable for RSJ's discriminatory acts under the "responsible corporate officer" doctrine.

■ Corporate officers are liable for violations of law by corporations when (1) the law violated is a public welfare statute that imposes strict liability, (2) the individual occupies a position of responsibility within the corporation, (3) the individual's position is

reasonably related to the violations, and (4) the individual's action or inaction facilitated the violations. *In re Dougherty*, 482 N.W.2d 485, 486 (Minn.App.1992), *pet. for rev. denied* (Minn. June 10, 1992). The Minnesota Human Rights Act, however, does not impose strict liability. Instead, liability attaches only if "the employer knows or should know of the existence of the harassment and fails to take timely and appropriate action." Minn.Stat. § 363.01, subd. 10a(3) (1988). Absent a statute imposing strict liability, we hold that the "responsible corporate officer" doctrine does not apply in this case.

Because we reverse the determination of liability, we do not reach the issue of whether the back pay awards were adequately supported by the evidence.

## DECISION

The ALJ erred in determining that the department did not exceed its statutory authority or follow an unlawful procedure when it took almost three years to make probable cause determinations and when it failed to file a complaint alleging aiding and abetting until more than four years after the complained of occurrences. The ALJ also erred in concluding that Schaefer was personally liable under Minn.Stat. § 363.03, subd. 6 for aiding and abetting and under the "responsible corporate officer" doctrine.

**Reversed.**