Sheila D. MATTHEWS, n/k/a Sheila D. Heller, Appellant,

v.

EICHORN MOTORS, INC., Defendant,

Mitch Eichorn, et al., Respondents.

No. A10–2095.

Court of Appeals of Minnesota.

July 11, 2011.

Andrea F. Rubenstein, Lawrence P. Schaefer, Schaefer Law Firm, LLC, Minneapolis, MN, for appellant.

Ross M. Hussey, Tupa & Hussey Law Offices, Minneapolis, MN, for respondents Mitch Eichorn, Justin Eichorn.

Considered and decided by KALITOWSKI, Presiding Judge; WRIGHT, Judge; and LARKIN, Judge.

## OPINION

WRIGHT, Judge.

In this appeal from summary judgment dismissing appellant's claims against respondents for aiding and abetting sexual harassment, in violation of Minn.Stat. § 363A.14 (2010), and declining to impose vicarious liability under the responsible-corporate-officer doctrine, appellant argues that there are genuine issues of material fact that preclude summary judgment and that the district court erred in its application of law. We affirm.

## FACTS

Appellant Sheila D. Matthews [1] worked as a business manager for Eichorn Motors, Inc. for a three-month period during 2006. Eichorn Motors was owned by respondent Justin Eichorn and Michael Coombe, who is not a party to this litigation. Respondent Mitch Eichorn is Justin Eichorn's father.

Eichorn Motors was formed in October 2005 to purchase the assets and continue the operations of an existing Chevrolet dealership in Grand Rapids. Justin Eichorn held an 85-percent majority interest in Eichorn Motors; Coombe held a 15-percent interest and served as general manager. Mitch Eichorn loaned Justin Eichorn money to purchase Eichorn Motors and served as its vice president until May 4, 2006. But Mitch Eichorn held neither an ownership interest in nor was an employee of Eichorn Motors. Coombe borrowed funds from Justin Eichorn to purchase his share of Eichorn Motors.

---

1. After the initiation of this case, Matthews married and changed her name to Sheila D. Heller. We refer to her in this appeal using the name included in the caption of the case on review.

As general manager, Coombe was responsible for the day-to-day operations of Eichorn Motors and hired all of its employees, including Matthews. Coombe offered Matthews the business-manager position in May 2006. In reliance on the offer, Matthews moved from Duluth to Grand Rapids.

Coombe began pursuing Matthews romantically before she commenced her employment at Eichorn Motors. Matthews accepted an invitation from Coombe in mid-May to join him and his 14–year–old son for dinner and a movie. When Coombe demonstrated inappropriate affection, Matthews advised Coombe that she would not become romantically involved with her employer or co-workers. Coombe also left multiple non-business-related voice and text messages for Matthews during May, in which he wrote that he was thinking about her, that she was "such a cutie" and "a special girl," and that they were going to be "best friends." When Matthews stopped by Eichorn Motors to meet other employees at the end of May, Coombe greeted her with a hug and asked to come to her apartment to use her tanning bed. Coombe's inappropriate conduct continued in June. For example, when Matthews dropped off her packing boxes with Coombe so that he could use them for his upcoming relocation, Coombe commented: "[Y]ou look so hot in those shorts" and "you sure fill out that top." Coombe also became upset when Matthews received flowers at work from a friend.

Despite her concerns about Coombe's conduct, Matthews began working at Eichorn Motors on June 14. Matthews advised Coombe that she did not think that the "owners" would approve of her dating her supervisor. Shortly thereafter, Coombe told Matthews that he had asked Mitch Eichorn and/or Justin Eichorn for permission to date her.[2] During her birthday celebration shortly after her employment began, Matthews learned that, before she started working at Eichorn Motors, Coombe told certain employees, "[H]ands off Sheila—she's taken." Coombe also invited Matthews to his home for dinner to celebrate her birthday. She declined. Throughout June, Coombe continued making inappropriate comments and being inappropriately affectionate with Matthews.

In July, Coombe's actions toward Matthews seemed to improve, but she learned that Coombe was making sexual advances toward other women employees. On July 27, Matthews called Coombe and directed him to stop sexually harassing women at work. Also during July, Coombe spoke with Matthews about driving together to a work-related golf tournament that they both planned to attend. Because Matthews did not want to ride with Coombe, she made plans to drive separately to the tournament and to visit her family on the way. When Matthews advised Coombe of her plans, he became angry.

On August 3, while Coombe was away from work to attend the golf tournament, Matthews spoke with Mitch Eichorn, who was voluntarily performing odd jobs at Eichorn Motors, about Coombe's sexually harassing conduct. Matthews did so because she believed he was an owner of Eichorn Motors. Justin Eichorn appeared to have only a limited role in the operation of the business and was rarely present at Eichorn Motors. Mitch Eichorn, on the other hand, was regularly present. Ac-

---

**2.** In her affidavit, Matthews alleges that Coombe asked Mitch Eichorn; in her statement attached to her written discovery responses, she states that Coombe asked Mitch Eichorn and Justin Eichorn.

cording to Matthews, in addition to providing physical labor to remodel Eichorn Motors, Mitch Eichorn "inserted himself in a variety of ways in the daily activities" of the business. Matthews and other employees also were aware that Mitch Eichorn financed the acquisition of Eichorn Motors. And on at least one occasion when Matthews referred to Mitch Eichorn as the owner of Eichorn Motors, Coombe did not correct her.

According to Matthews, she told Mitch Eichorn about the incidents of Coombe's sexual harassment. Mitch Eichorn responded that because he loved his wife, Matthews need not worry about him making sexual advances. Mitch Eichorn referred to a Christian radio station and recommended that she listen to it. The next morning, several employees saw Mitch Eichorn, Justin Eichorn, and Coombe enter an office and close the door behind them. The employees heard shouting from within.

Approximately 10 days later, on August 15, Coombe and Justin Eichorn came to Matthews's office and terminated her employment. When Matthews asked the reason she was being fired, Coombe responded that she had not followed procedures. Matthews then accused Justin Eichorn of knowing the real reason that she was being fired. Justin Eichorn did not respond. But Coombe replied, "Sheila, you are so full of yourself, you have nothing on me and could not prove it anyway."

Matthews brought this legal action against Eichorn Motors, Mitch Eichorn, and Justin Eichorn, alleging that Coombe had subjected her to sexual harassment and reprisal, in violation of the Minnesota Human Rights Act (MHRA), Minn.Stat. § 363A.14, for which Eichorn Motors was liable as her employer. She also alleged that Mitch Eichorn and Justin Eichorn were liable for aiding and abetting the sexual harassment under the MHRA and as responsible corporate officers. Mitch Eichorn and Justin Eichorn moved for summary judgment, which the district court granted. The district court reasoned that the evidence failed to establish a genuine issue of material fact that either Mitch Eichorn or Justin Eichorn aided or abetted the harassment, and that the responsible-corporate-officer doctrine does not apply to MHRA claims. The district court subsequently granted a default judgment against Eichorn Motors, which had ceased operations during the pendency of the litigation. This appeal followed.

## ISSUES

I. Did the district court err by granting summary judgment in favor of respondents for aiding and abetting MHRA violations?

II. Did the district court err by concluding that the responsible-corporate-officer doctrine does not apply to MHRA claims?

## ANALYSIS

Summary judgment should be granted when "there is no genuine issue as to any material fact and [one] party is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.03. Whether summary judgment was properly granted is a question of law, which we review de novo. *Prior Lake Am. v. Mader*, 642 N.W.2d 729, 735 (Minn. 2002). In doing so, we consider whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). A genuine issue of material fact does not exist when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106

S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "[T]he party resisting summary judgment must do more than rest on mere averments." *Id.* at 71. Rather, a genuine issue for trial must be established by substantial evidence. *Id.* at 69–70. We view the evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). Summary judgment is properly granted when a party fails to establish the existence of an element essential to the party's case. *Bersch v. Rgnonti & Assocs.,* 584 N.W.2d 783, 786 (Minn.App.1998), *review denied* (Minn. Dec. 15, 1998).

## I.

The MHRA prohibits sexual harassment and reprisal. Minn.Stat. §§ 363A.08, subd. 2, 363A.15 (2010). In addition to imposing liability on employers, the MHRA provides: "It is an unfair discriminatory practice for *any person* ... intentionally to aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by this chapter" or to attempt to do so. Minn.Stat. § 363A.14 (emphasis added). The primary issue presented in this appeal is whether the district court erred by concluding that there is no genuine issue of material fact as to whether Justin Eichorn or Mitch Eichorn aided or abetted Coombe's sexual harassment or reprisal against Matthews.

The MHRA does not define the terms "aid" and "abet." *See* Minn.Stat. § 363A.03 (2010) (statutory definitions). And although aiding-and-abetting claims have been addressed in both state and federal Minnesota cases, not one has addressed the legal standard for an aiding-and-abetting claim. *See, e.g., Wallin v. Minn. Dep't of Corr.,* 598 N.W.2d 393, 405 (Minn.App.1999) (concluding that appellant could not prove respondent's involvement in conduct that constituted an MHRA violation), *review denied* (Minn. Oct. 21, 1999); *see also Smith v. DataCard Corp.,* 9 F.Supp.2d 1067, 1081 (D.Minn.1998) (holding that conclusory allegations about "acquiescence" in discrimination are insufficient to survive summary judgment on MHRA aiding-and-abetting claim); *Ulrich v. City of Crosby,* 848 F.Supp. 861, 869–70 & n. 9 (D.Minn.1994) (holding that plaintiff's MHRA aiding-and-abetting allegations did not support punitive-damages claim but declining to reach merits of claim). Accordingly, we begin our analysis by construing the terms "aid" and "abet" as they are used in the MHRA.

When interpreting a statute, we must "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2010). In doing so, we first determine whether the statute's language, on its face, is ambiguous. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn. 2001). A statute's language is ambiguous only when its language is subject to more than one reasonable interpretation. *Amaral v. St. Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999). We construe words and phrases according to their plain and ordinary meaning. *Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn.1980); *see also* Minn.Stat. § 645.08(1) (2010) (providing that words are construed according to their common usage). When the legislature's intent is clearly discernible from a statute's plain and unambiguous language, we interpret the language according to its plain meaning without resorting to other principles of statutory construction. *State v. Anderson,* 683 N.W.2d 818, 821 (Minn.2004). The provisions of the MHRA are to be "construed liberally" to accomplish the antidiscrimination purposes of the statute. Minn.Stat. § 363A.04 (2010). The remedial nature of a statute, however, does not

justify the adoption of a meaning that is not intended by the legislature. *Krueger v. Zeman Constr. Co.*, 781 N.W.2d 858, 863 (Minn.2010).

As a general matter, to "aid" and "abet" means "[t]o assist or facilitate [an act], or to promote its accomplishment." *Black's Law Dictionary* 81 (9th ed.2009); *see also The American Heritage Dictionary of the English Language* (3d ed.1992) 37 (defining "aid" to mean "[t]o furnish with help, support, or relief"), 3 (defining "abet" to mean "[t]o approve, encourage, and support (an action or a plan of action)" or "[t]o urge, encourage, or help (a person)"). This definition is consistent with that used by the Minnesota legislature and Minnesota courts in at least two contexts. Minnesota criminal law imposes liability for a crime committed by another when "the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn.Stat. § 609.05, subd. 1 (2010). The Minnesota Supreme Court has adopted the Restatement (Second) of Torts § 876(b) when defining aiding and abetting in the context of civil tort liability. Section 876(b) provides for aiding-and-abetting liability when a person knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself. *See Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187 (Minn.1999) (applying Restatement (Second) of Torts legal standard to claim alleging that ac-countants aided clients in breaching fiduciary duties).

Despite the substantive similarity between Minnesota's criminal and civil legal standards for aiding and abetting, other jurisdictions have suggested that the criminal legal standard for aiding and abetting is more stringent with respect to proof of intent:

> As Judge Learned Hand explained in discussing generally the difference between civil and criminal aiding and abetting laws, the intent standard in the civil tort context requires only that the criminal conduct be the "natural consequence of [one's] original act," whereas criminal intent to aid and abet requires that the defendant have a "purposive attitude" toward the commission of the offense.

*Rice v. Paladin Enters., Inc.*, 128 F.3d 233, 251 (4th Cir.1997) (alteration in original) (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938)); *see also Failla v. City of Passaic*, 146 F.3d 149, 157 (3d Cir.1998) (explaining that under New Jersey law, "the element of shared intent necessary in the criminal context is not an element of aiding and abetting in the civil context").

Although Minnesota's appellate courts have not addressed the applicable legal standard for aiding-and-abetting claims under the MHRA, other state courts have adopted the Restatement (Second) of Torts § 876(b) when interpreting similar aiding-and-abetting provisions in their anti-discrimination statutes.[3] *See Ellison v.*

---

**3.** When construing provisions of the MHRA, Minnesota courts often have relied on decisions construing Title VII, 42 U.S.C. §§ 2000e–2000e–17 (2006). *See, e.g., Coursolle v. EMC Ins. Grp., Inc.*, 794 N.W.2d 652, 661 n. 3 (Minn.App.2011) (explaining that Minnesota Supreme Court often relies on Title VII caselaw when interpreting the MHRA when there are no meaningful differences in the statutory language), *review denied* (Minn.

Apr. 19, 2011). But because Title VII does not include an aiding-and-abetting provision, it is not available for our analysis here. *See Individual Liability of Supervisors, Managers, Officers or Co-employees for Discriminatory Actions Under State Civil Rights Act*, 83 A.L.R.5th 1, § 2[a] (2000) (explaining that Title VII does not contain an aiding-and-abetting provision). Like Minnesota, several states have included aiding-and-abetting pro-

*Plumbers & Steam Fitters Union Local 375*, 118 P.3d 1070, 1077 (Alaska 2005) (applying Restatement (Second) of Torts when construing provision that it is "unlawful for a person to aid, abet, incite, compel, or coerce the doing of a[n unlawful discriminatory] act" (quotation omitted)); *Tarr v. Ciasulli*, 181 N.J. 70, 853 A.2d 921, 928–29 (2004) (applying Restatement (Second) of Torts when construing provision that it is unlawful for any person "to aid, abet, incite, compel or coerce the doing of any of the acts forbidden" under the New Jersey Law Against Discrimination (quotation omitted)); *Fiol v. Doellstedt*, 50 Cal. App.4th 1318, 58 Cal.Rptr.2d 308, 312–13 (1996) (applying common-law standard, as reflected in Restatement (Second) of Torts, when construing provision that it is an unlawful employment practice "[f]or any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden" by the Fair Employment and Housing Act (alteration in original) (quotation omitted)); *cf. Carr v. United Parcel Serv.*, 955 S.W.2d 832, 836 (Tenn.1997) (applying Restatement (Second) of Torts when construing provision that it is a discriminatory practice for a person to "[a]id, abet, incite, compel or command a person to engage in any of the acts or practices declared discriminatory" by the Tennessee Human Rights Act (quotation omitted)), *overruled on other grounds by Parker v. Warren Cnty. Util. Dist.*, 2 S.W.3d 170, 176–78 (Tenn.1999).

We are aware of only one decision, *Tyson v. CIGNA Corp.*, adopting the criminal standard for aiding and abetting for violating a state anti-discrimination law. 918 F.Supp. 836, 840 (D.N.J.1996). But *Tyson* appears to have been overruled. In *Tyson*, the United States District Court for the District of New Jersey held that an aiding-and-abetting claim under the New Jersey Law Against Discrimination (NJLAD) is subject to the criminal aiding-and-abetting standard, requiring proof that a defendant "share[d] the same intent as the one who actually committed the offense." *Id.* The Third Circuit applied *Tyson*'s shared-intent analysis when deciding an aiding-and-abetting claim brought under the Pennsylvania Human Rights Act. *See Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 553 (3d Cir.1996) (holding that employee and employer did not share same intent). But the Third Circuit subsequently rejected *Tyson*'s *analysis; and the New Jersey Supreme Court has adopted the Restatement (Second) of Torts legal standard for aiding-and-abetting claims under the NJLAD. *See Failla*, 146 F.3d at 156–58 (rejecting *Tyson*'s aiding-and-abetting analysis and predicting that New Jersey Supreme Court would adopt Restatement (Second) of Torts legal standard); *Tarr*, 853 A.2d at 929 (agreeing with *Failla* that legal standard of Restatement (Second) of Torts governs).

Here, both the district court and respondents relied on our decision in *Wallin* to

visions in their anti-discrimination statutes. *Id.* And there is an aiding-and-abetting provision in the Model Anti–Discrimination Act promulgated by the Uniform Laws Commission in 1966. *See* Carl A. Auerbach, *The 1967 Amendments to the Minnesota State Act Against Discrimination and the Uniform Law Commissioners' Model Anti–Discrimination Act: A Comparative Analysis and Evaluation*, 52 Minn. L.Rev. 231, 232, 271, 397 (1967) (citing National Conference of Commissioners on Uniform State Laws, Uniform Law Commissioners' Model Anti–Discrimination Act (1966)). Although Minnesota's aiding-and-abetting provision predated the Model Anti–Discrimination Act, *see* 1955 Laws ch. 516, § 5(5), the language of the two provisions is similar. *See* Auerbach, *supra*, at 378, 397 (comparing Minnesota State Act Against Discrimination language with Model Anti–Discrimination Act language).

conclude that aiding and abetting "implies that persons acted in concert against another for a discriminatory purpose." In *Wallin,* we affirmed summary judgment dismissing an MHRA aiding-and-abetting disability-discrimination claim. 598 N.W.2d at 405. In doing so, we agreed with the district court's analysis that the plaintiff "failed to establish any facts giving rise to a prima facie case that [the defendant] acted in concert with other staff or supervisors to discriminate against [the plaintiff] because of his disabilities." *Id.* We agreed that the plaintiff failed to make that evidentiary showing because the conduct in which the respondent was alleged to have been involved did not rise to the level of an MHRA violation. *Id.* Thus, *Wallin* establishes that a viable discrimination claim is a prerequisite to a claim of aiding and abetting discrimination. *Id.* But because the *Wallin* court was not asked to construe the aiding-and-abetting provision of the MHRA, *Wallin* does not address whether shared intent is a necessary element of such a claim. *Id.*

■ To the extent that the criminal and civil standards differ, we conclude that the legal standard established in the Restatement (Second) of Torts should govern aiding-and-abetting claims under the MHRA. We are mindful that claims under the MHRA are not, strictly speaking, tort claims. The Restatement (Second) of Torts legal standard, however, is consistent with both the ordinary meaning of aiding and abetting in a civil context *and* the remedial purposes of the MHRA. *Cf. Tarr,* 853 A.2d at 929 (reasoning that Restatement (Second) of Torts legal standard for aiding and abetting "is consistent with the common usage of those terms"). Accordingly, we hold that a person is liable for aiding and abetting a violation of the MHRA when that person knows that another person's conduct constitutes a violation of the MHRA and "gives substantial assistance or encouragement to the other so to conduct himself." Restatement (Second) of Torts § 876(b). We next apply this legal standard to the facts and circumstances at issue here.

To avoid summary judgment under the Restatement (Second) of Torts legal standard, the evidence, when viewed in the light most favorable to Matthews, must establish that (1) Coombe's conduct violated the MHRA, and (2) either Mitch Eichorn or Justin Eichorn knew that Coombe's conduct violated the MHRA and substantially assisted or encouraged the violations. *Cf. Witzman,* 601 N.W.2d at 187 (applying Restatement (Second) of Torts and establishing three elements for aiding and abetting breach of fiduciary duty). Neither Mitch Eichorn nor Justin Eichorn challenges the sufficiency of the evidence to meet the first element.[4] The latter two elements are evaluated "in tandem" such that "where there is a minimal showing of substantial assistance, a greater showing of scienter is required." *Id.* at 188 (quotation omitted).

> Whether the requisite degree of knowledge or assistance exists depends in part on the particular facts and circumstances of each case. Factors such as the relationship between the defendant and the primary tortfeasor, the nature of the primary tortfeasor's activity, the nature of the assistance provided by the defendant, and the defendant's state of mind all come into play.

*Id.* (citations omitted).

■ When applying the Restatement (Second) of Torts legal standard to an

---

4. We do not address whether Matthews's evidence is sufficient to prove her sexual harassment and reprisal claims against Eichorn Motors, which were decided by default judgment and are not before us on appeal.

aiding-and-abetting claim under a state anti-discrimination law, state and federal courts generally have held that a defendant's failure to act does not constitute "substantial assistance." *See, e.g., Failla,* 146 F.3d at 158 (granting new trial on aiding-and-abetting claim because jury was asked only whether defendant was aware of the discrimination); *Carr,* 955 S.W.2d at 836 ("Failure to act or mere presence during the commission of a tort is insufficient for tort accomplice liability."); *cf. Bjerke v. Johnson,* 742 N.W.2d 660, 665 (Minn. 2007) ("Generally, no duty is imposed on an individual to protect another from harm...."). But courts have recognized that "inaction can form the basis of aiding and abetting liability if it rises to the level of providing substantial assistance." *Failla,* 146 F.3d at 158 n. 11. *But see Fiol,* 58 Cal.Rptr.2d at 312 (categorically holding that "[m]ere knowledge that a tort is being committed and the failure to prevent it [do] not constitute aiding and abetting"). The *Failla* court explained that the degree of involvement is important and that substantial assistance must constitute something more than knowledge coupled with inaction to avoid creating "a reverse respondeat superior liability ... under the guise of aiding and abetting." 146 F.3d at 159; *see also* Restatement (Second) of Torts § 876 cmt. d ("The assistance or participation by the defendant may be so slight that he is not liable for the act of the other."). Applying this legal standard here, we conclude that the evidence is insufficient to support a finding that either Justin Eichorn or Mitch Eichorn aided and abetted the asserted sexual harassment and reprisal.

With respect to Justin Eichorn, we agree with the district court that, when viewed most favorably to Matthews, the record—including evidence that Justin Eichorn participated in a loud conversation behind closed doors the day after Mat-thews reported the sexual harassment to Mitch Eichorn and that Justin Eichorn looked down at his feet and did not respond to Matthews's questions after Coombe terminated her employment—does not support a reasonable inference that Justin Eichorn knew about Coombe's sexual harassment. By Matthews's own admissions, Justin Eichorn was rarely present at Eichorn Motors and she never told him about the sexual harassment. Matthews's speculation that Justin Eichorn must have known about Coombe's sexual harassment is insufficient to preclude summary judgment. Citing *Frieler v. Carlson Mktg. Grp., Inc.,* 751 N.W.2d 558 (Minn.2008), Matthews asserts that knowledge of the sexual harassment should be imputed to Justin Eichorn because Coombe was a high-level supervisor. We disagree. *Frieler* holds that knowledge of supervisor harassment is imputed to the employer—in this case Eichorn Motors—not to individual shareholders. 751 N.W.2d at 570. Without evidence that Justin Eichorn knew about Coombe's sexual harassment, Matthews's aiding-and-abetting claim against him fails as a matter of law.

■ As to Mitch Eichorn, although the record establishes for purposes of summary judgment analysis that he knew about Coombe's sexual harassment, there is no evidence, even when Matthews's assertions are taken as true, that Mitch Eichorn substantially assisted that conduct. At the time of the sexual harassment, Mitch Eichorn held neither an ownership interest in nor a position with Eichorn Motors. Thus, we reject Matthews's reliance on cases in which courts concluded that evidence that a supervisor knew that an employee was being harassed and took no action to stop it was sufficient to support an aiding-and-abetting claim. *See, e.g., Chapin v. Univ. of Mass. at Lowell,*

977 F.Supp. 72, 80 (D.Mass.1997) (applying Massachusetts law).[5] Absent any relationship between Mitch Eichorn and Eichorn Motors or Matthews, subjecting Mitch Eichorn to aiding-and-abetting liability under the MHRA would be tantamount to imposing a duty on third parties to protect against workplace sexual harassment. Accordingly, Matthews's aiding-and-abetting claim against Mitch Eichorn also fails as a matter of law.

## II.

Matthews alternatively argues that Justin Eichorn is subject to liability under the responsible-corporate-officer doctrine, which permits a corporate officer to be held personally liable for the corporation's violations of strict-liability, public-welfare statutes, even if the corporate officer was unaware of the actual violations. *State v. Arkell,* 672 N.W.2d 564, 566 (Minn.2003). Our legal research has produced no Minnesota caselaw that applies this doctrine to litigation between two private parties. *Cf. id.* at 566–70 (addressing responsible-corporate-officer liability in action asserted by State of Minnesota for building-code violations); *In re Dougherty,* 482 N.W.2d 485, 488–89 (Minn.App. 1992) (addressing responsible-corporate-

officer liability for administrative penalty imposed by Minnesota Pollution Control Agency), *review denied* (Minn. June 10, 1992); *see also State by Beaulieu v. RSJ, Inc.,* 532 N.W.2d 610, 613–14 (Minn.App. 1995) (addressing responsible-corporate-officer liability for damages and civil penalty in MHRA action asserted by commissioner of human rights), *aff'd as modified on other grounds,* 552 N.W.2d 695 (Minn. 1996).

■ Even assuming, without deciding, that the responsible-corporate-officer doctrine can apply in private litigation, we have already rejected its application to the MHRA because the MHRA is not a strict-liability statute. *RSJ,* 532 N.W.2d at 614. While acknowledging the holding in *RSJ,* Matthews argues that the Minnesota Supreme Court's more recent decision in *Frieler* calls *RSJ*'s holding into doubt. We are not persuaded. Indeed, the *Frieler* court expressly rejected the "argument that strict liability is the standard to be applied in [MHRA] sexual harassment cases." 751 N.W.2d at 568. Accordingly, we reaffirm our holding in *RSJ* that the MHRA is not a strict-liability statute to which the responsible-corporate-officer doctrine applies.[6] 532 N.W.2d at 614.

---

**5.** We also observe that the authority is divided as to whether supervisors can be held personally liable for failing to stop harassment within their knowledge. *Compare id.* (holding that alleged inaction by supervisor with knowledge that harassment is occurring is actionable under Massachusetts law) *with Fiol,* 58 Cal.Rptr.2d at 312 (explaining that supervisors are not liable for harassment perpetrated by their subordinates because "[m]ere knowledge that a tort is being committed and the failure to prevent it [do] not constitute aiding and abetting"); *see generally Individual Liability of Supervisors, Managers, Officers or Co-employees for Discriminatory Actions Under State Civil Rights Act,* 83 A.L.R.5th 1, §§ 12[a]–12[b] (2000) (collecting conflicting authority). We need not resolve that issue here, however, because there is no

genuine issue of material fact under this theory against either Justin Eichorn (because there is no evidence that he had knowledge of the harassment) or Mitch Eichorn (because he was not a supervisor).

**6.** In light of our holding, we need not determine whether the MHRA is a public-welfare statute as contemplated under the responsible-corporate-office doctrine. We observe that such status has been recognized by state and federal courts in "limited circumstances," usually involving "statutes that regulate potentially harmful or injurious items." *Staples v. United States,* 511 U.S. 600, 607, 114 S.Ct. 1793, 1798, 128 L.Ed.2d 608 (1994); *cf. Dougherty,* 482 N.W.2d at 489 (holding that "hazardous waste laws consti-

## DECISION

Appellant did not present sufficient evidence to support her aiding-and-abetting claims against respondents under the legal standard articulated in the Restatement (Second) of Torts § 876(b), which we conclude governs aiding-and-abetting claims under the MHRA. Moreover, the responsible-corporate-officer doctrine does not apply to claims under the MHRA, and thus provides no legal basis for imposing liability on respondent Justin Eichorn. Accordingly, we affirm the district court's grant of summary judgment dismissing appellant's claims against respondents.

**Affirmed.**

tute a public welfare statute because they pervasively affect activities which threaten human health and safety as well as the environment").